# BEARDEN *v.* GEORGIA

No. 81–6633.   Argued January 11, 1983—Decided May 24, 1983

O'CONNOR, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. WHITE, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and POWELL and REHNQUIST, JJ., joined, *post*, p. 675.

*James H. Lohr*, by appointment of the Court, 459 U. S. 819, argued the cause *pro hac vice* and filed briefs for petitioner.

*George M. Weaver*, Assistant Attorney General of Georgia, argued the cause for respondent. With him on the brief were *Michael J. Bowers*, Attorney General, *Robert S. Stubbs II*, Executive Assistant Attorney General, and *Marion O. Gordon* and *John C. Walden*, Senior Assistant Attorneys General.

JUSTICE O'CONNOR delivered the opinion of the Court.

The question in this case is whether the Fourteenth Amendment prohibits a State from revoking an indigent defendant's probation for failure to pay a fine and restitution. Its resolution involves a delicate balance between the acceptability, and indeed wisdom, of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources. We conclude that the

trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist. We therefore reverse the judgment of the Georgia Court of Appeals upholding the revocation of probation, and remand for a new sentencing determination.

## I

In September 1980, petitioner was indicted for the felonies of burglary and theft by receiving stolen property. He pleaded guilty, and was sentenced on October 8, 1980. Pursuant to the Georgia First Offender's Act, Ga. Code Ann. § 27–2727 *et seq.* (current version at § 42–8–60 *et seq.* (Supp. 1982)), the trial court did not enter a judgment of guilt, but deferred further proceedings and sentenced petitioner to three years on probation for the burglary charge and a concurrent one year on probation for the theft charge. As a condition of probation, the trial court ordered petitioner to pay a $500 fine and $250 in restitution.[1] Petitioner was to pay $100 that day, $100 the next day, and the $550 balance within four months.

Petitioner borrowed money from his parents and paid the first $200. About a month later, however, petitioner was laid off from his job. Petitioner, who has only a ninth-grade education and cannot read, tried repeatedly to find other

---

[1] The trial court ordered a payment of $200 restitution for the theft by receiving charge; and ordered payment of $50 in restitution and $500 fine for the burglary charge.

The other conditions of probation prohibited petitioner from leaving the jurisdiction of the court without permission, from drinking alcoholic beverages, using or possessing narcotics, or visiting places where alcoholic beverages or narcotics are sold, from keeping company with persons of bad reputation, and from violating any penal law; and required him to avoid places of disreputable character, to work faithfully at suitable employment insofar as possible, and to report to the probation officer as directed and to permit the probation officer to visit him.

work but was unable to do so. The record indicates that petitioner had no income or assets during this period.

Shortly before the balance of the fine and restitution came due in February 1981, petitioner notified the probation office he was going to be late with his payment because he could not find a job. In May 1981, the State filed a petition in the trial court to revoke petitioner's probation because he had not paid the balance.[2] After an evidentiary hearing, the trial court revoked probation for failure to pay the balance of the fine and restitution,[3] entered a conviction, and sentenced petitioner to serve the remaining portion of the probationary period in prison.[4] The Georgia Court of Appeals, relying on earlier Georgia Supreme Court cases,[5] rejected petitioner's claim that imprisoning him for inability to pay the fine violated the Equal Protection Clause of the Fourteenth Amendment. The Georgia Supreme Court denied review. Since other courts have held that revoking the probation of indigents for failure to pay fines does violate the Equal Protec-

---

[2] The State's petition alleged two grounds for revoking probation: petitioner's failure to pay the fine and restitution, and an alleged burglary he committed on May 10, 1981. The State abandoned the latter ground at the hearing to revoke probation, and counsel has informed us that petitioner was later acquitted of the charge. Brief for Petitioner 4, n. 1.

[3] The trial court also found that petitioner violated the conditions of probation by failing to report to his probation officer as directed. Since the trial court was unauthorized under state law to revoke probation on a ground not stated in the petition, *Radcliff* v. *State*, 134 Ga. App. 244, 214 S. E. 2d 179 (1975), the Court of Appeals upheld the revocation solely on the basis of petitioner's failure to pay the fine and restitution.

[4] The trial court first sentenced petitioner to five years in prison, with a concurrent 3-year sentence for the theft conviction. Since the record of the initial sentencing hearing failed to reveal that petitioner had been warned that a violation of probation could result in a longer prison term than the original probationary period, as required by *Stephens* v. *State*, 245 Ga. 835, 268 S. E. 2d 330 (1980), the court reduced the prison term to the remainder of the probationary period.

[5] *Hunter* v. *Dean*, 240 Ga. 214, 239 S. E. 2d 791 (1977), cert. dism'd, 439 U. S. 281 (1978); *Calhoun* v. *Couch*, 232 Ga. 467, 207 S. E. 2d 455 (1974).

tion Clause,[6] we granted certiorari to resolve this important issue in the administration of criminal justice.    458 U. S. 1105 (1982).

## II

This Court has long been sensitive to the treatment of indigents in our criminal justice system.    Over a quarter-century ago, Justice Black declared that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin* v. *Illinois*, 351 U. S. 12, 19 (1956) (plurality opinion). *Griffin*'s principle of "equal justice," which the Court applied there to strike down a state practice of granting appellate review only to persons able to afford a trial transcript, has been applied in numerous other contexts.    See, *e. g.*, *Douglas* v. *California*, 372 U. S. 353 (1963) (indigent entitled to counsel on first direct appeal); *Roberts* v. *LaVallee*, 389 U. S. 40 (1967) (indigent entitled to free transcript of preliminary hearing for use at trial); *Mayer* v. *Chicago*, 404 U. S. 189 (1971) (indigent cannot be denied an adequate record to appeal a conviction under a fine-only statute).    Most relevant to the issue here is the holding in *Williams* v. *Illinois*, 399 U. S. 235 (1970), that a State cannot subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely because they are too poor to pay the fine. *Williams* was followed and extended in *Tate* v. *Short*, 401 U. S. 395 (1971), which held that a State cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full.    But the Court has also recognized limits on the principle of protecting indigents in the criminal justice system.    For example, in *Ross* v. *Moffitt*, 417 U. S. 600 (1974), we held that indigents

---

[6] See, *e. g.*, *Frazier* v. *Jordan*, 457 F. 2d 726 (CA5 1972); *In re Antazo*, 3 Cal. 3d 100, 473 P. 2d 999 (1970); *State* v. *Tackett*, 52 Haw. 601, 483 P. 2d 191 (1971); *State* v. *De Bonis*, 58 N. J. 182, 276 A. 2d 137 (1971); *State ex rel. Pedersen* v. *Blessinger*, 56 Wis. 2d 286, 201 N. W. 2d 778 (1972).

had no constitutional right to appointed counsel for a discretionary appeal. In *United States* v. *MacCollum*, 426 U. S. 317 (1976) (plurality opinion), we rejected an equal protection challenge to a federal statute which permits a district court to provide an indigent with a free trial transcript only if the court certifies that the challenge to his conviction is not frivolous and the transcript is necessary to prepare his petition.

Due process and equal protection principles converge in the Court's analysis in these cases. See *Griffin* v. *Illinois, supra,* at 17. Most decisions in this area have rested on an equal protection framework, although Justice Harlan in particular has insisted that a due process approach more accurately captures the competing concerns. See, *e. g., Griffin* v. *Illinois, supra,* at 29–39 (Harlan, J., dissenting); *Williams* v. *Illinois, supra,* at 259–266 (Harlan, J., concurring). As we recognized in *Ross* v. *Moffitt, supra,* at 608–609, we generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause.

The question presented here is whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate. The parties, following the framework of *Williams* and *Tate,* have argued the question primarily in terms of equal protection, and debate vigorously whether strict scrutiny or rational basis is the appropriate standard of review. There is no doubt that the State has treated the petitioner differently from a person who did not fail to pay the imposed fine and therefore did not violate probation. To determine whether this differential treatment violates the Equal Protection

Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine.[7] Whether analyzed in terms of equal protection or due process,[8] the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individ-

---

[7] We have previously applied considerations of procedural and substantive fairness to probation and parole revocation proceedings. In *Morrissey* v. *Brewer*, 408 U. S. 471 (1972), where we established certain procedural requirements for parole revocation hearings, we recognized that society has an "interest in treating the parolee with basic fairness." *Id.*, at 484. We addressed the issue of fundamental fairness more directly in *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973), where we held that in certain cases "fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.*, at 790. Fundamental fairness, we determined, presumptively requires counsel when the probationer claims that "there are substantial reasons which justified or mitigated the violation and make revocation inappropriate." *Ibid.* In *Douglas* v. *Buder*, 412 U. S. 430 (1973), we found a substantive violation of due process when a state court had revoked probation with no evidence that the probationer had violated probation. Today we address whether a court can revoke probation for failure to pay a fine and restitution when there is no evidence that the petitioner was at fault in his failure to pay or that alternative means of punishment were inadequate.

[8] A due process approach has the advantage in this context of directly confronting the intertwined question of the role that a defendant's financial background can play in determining an appropriate sentence. When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished," *North Carolina* v. *Pearce*, 395 U. S. 711, 723 (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.

ual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . ." *Williams* v. *Illinois, supra,* at 260 (Harlan, J., concurring).

In analyzing this issue, of course, we do not write on a clean slate, for both *Williams* and *Tate* analyzed similar situations. The reach and limits of their holdings are vital to a proper resolution of the issue here. In *Williams,* a defendant was sentenced to the maximum prison term and fine authorized under the statute. Because of his indigency he could not pay the fine. Pursuant to another statute equating a $5 fine with a day in jail, the defendant was kept in jail for 101 days beyond the maximum prison sentence to "work out" the fine. The Court struck down the practice, holding that "[o]nce the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." 399 U. S., at 241–242. In *Tate* v. *Short,* 401 U. S. 395 (1971), we faced a similar situation, except that the statutory penalty there permitted only a fine. Quoting from a concurring opinion in *Morris* v. *Schoonfield,* 399 U. S. 508, 509 (1970), we reasoned that "'the same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine.'" 401 U. S., at 398.

The rule of *Williams* and *Tate,* then, is that the State cannot "'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.'" *Tate, supra,* at 398. In other words, if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely be-

cause he lacked the resources to pay it. Both *Williams* and *Tate* carefully distinguished this substantive limitation on the imprisonment of indigents from the situation where a defendant was at fault in failing to pay the fine. As the Court made clear in *Williams*, "nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs." 399 U. S., at 242, n. 19. Likewise in *Tate*, the Court "emphasize[d] that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." 401 U. S., at 400.

This distinction, based on the reasons for nonpayment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. See ALI, Model Penal Code § 302.2(1) (Prop. Off. Draft 1962). Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own,[9] it is fundamentally unfair to revoke probation automatically

---

[9] We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation. For instance, it may indeed be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it becomes evident that efforts at controlling his chronic drunken driving have failed. Cf. *Powell* v. *Texas*, 392 U. S. 514 (1968); *Robinson* v. *California*, 370 U. S. 660 (1962). Ultimately, it must be remembered that the sentence was not imposed for a circumstance beyond the probationer's control "but because he had committed a crime." *Williams*, 399 U. S., at 242. In contrast to a condition like chronic drunken driving, however, the condition at issue here—indigency—is itself no threat to the safety or welfare of society.

without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a "substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate." *Gagnon* v. *Scarpelli*, 411 U. S. 778, 790 (1973).[10]  Cf. *Zablocki* v. *Redhail*, 434 U. S. 374, 400 (1978) (POWELL, J., concurring) (distinguishing, under both due process and equal protection analyses, persons who shirk their moral and legal obligation to pay child support from those wholly unable to pay).

The State, of course, has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws. A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially

---

[10] Numerous decisions by state and federal courts have recognized that basic fairness forbids the revocation of probation when the probationer is without fault in his failure to pay the fine. For example, in *United States* v. *Boswell*, 605 F. 2d 171 (CA5 1979), the court distinguished between revoking probation where the defendant did not have the resources to pay restitution and had no way to acquire them—a revocation the court found improper—from revoking probation where the defendant had the resources to pay or had negligently or deliberately allowed them to be dissipated in a manner that resulted in his inability to pay—an entirely legitimate action by the trial court. Accord, *United States* v. *Wilson*, 469 F. 2d 368 (CA2 1972); *United States* v. *Taylor*, 321 F. 2d 339 (CA4 1963); *In re Antazo*, 3 Cal. 3d, at 115–117, 473 P. 2d, at 1007–1009; *State* v. *Huggett*, 55 Haw. 632, 525 P. 2d 1119 (1974); *Huggett* v. *State*, 83 Wis. 2d 790, 800–802, 266 N. W. 2d 403, 408 (1978). Commentators have similarly distinguished between the permissibility of revoking probation for contumacious failure to pay a fine, and the impermissibility of revoking probation when the probationer made good-faith efforts to pay. See, *e. g.*, ABA Standards for Criminal Justice 18–7.4 and Commentary (2d ed. 1980) ("incarceration should be employed only after the court has examined the reasons for nonpayment"); ALI, Model Penal Code § 302.2 (Prop. Off. Draft 1962) (distinguishing "contumacious" failure to pay fine from "good faith effort" to obtain funds); National Advisory Commission on Criminal Justice Standards and Goals, Corrections § 5.5 (1973); National Conference of Commissioners on Uniform State Laws, Model Sentencing and Corrections Act §§ 3–403, 3–404 (1978). See also Me. Rev. Stat. Ann., Tit. 17–A, § 1304 (Supp. 1982); Ill. Rev. Stat., ch. 38, ¶ 1005–6–4(d) (1981).

whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. See *Williams* v. *New York*, 337 U. S. 241, 250, and n. 15 (1949). As we said in *Williams* v. *Illinois*, "[a]fter having taken into consideration the wide range of factors underlying the exercise of his sentencing function, nothing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law." 399 U. S., at 243.

The decision to place the defendant on probation, however, reflects a determination by the sentencing court that the State's penological interests do not require imprisonment. See *Williams* v. *Illinois, supra,* at 264 (Harlan, J., concurring); *Wood* v. *Georgia,* 450 U. S. 261, 286–287 (1981) (WHITE, J., dissenting). A probationer's failure to make reasonable efforts to repay his debt to society may indicate that this original determination needs reevaluation, and imprisonment may now be required to satisfy the State's interests. But a probationer who has made sufficient bona fide efforts to pay his fine and restitution, and who has complied with the other conditions of probation, has demonstrated a willingness to pay his debt to society and an ability to conform his conduct to social norms. The State nevertheless asserts three reasons why imprisonment is required to further its penal goals.

First, the State argues that revoking probation furthers its interest in ensuring that restitution be paid to the victims of crime. A rule that imprisonment may befall the probationer who fails to make sufficient bona fide efforts to pay restitution may indeed spur probationers to try hard to pay, thereby increasing the number of probationers who make restitution. Such a goal is fully served, however, by revoking probation only for persons who have not made sufficient bona fide efforts to pay. Revoking the probation of someone who through no fault of his own is unable to make restitution will not make restitution suddenly forthcoming. Indeed,

such a policy may have the perverse effect of inducing the probationer to use illegal means to acquire funds to pay in order to avoid revocation.

Second, the State asserts that its interest in rehabilitating the probationer and protecting society requires it to remove him from the temptation of committing other crimes. This is no more than a naked assertion that a probationer's poverty by itself indicates he may commit crimes in the future and thus that society needs for him to be incapacitated. We have already indicated that a sentencing court can consider a defendant's employment history and financial resources in setting an initial punishment. Such considerations are a necessary part of evaluating the entire background of the defendant in order to tailor an appropriate sentence for the defendant and crime. But it must be remembered that the State is seeking here to use as the *sole* justification for imprisonment the poverty of a probationer who, by assumption, has demonstrated sufficient bona fide efforts to find a job and pay the fine and whom the State initially thought it unnecessary to imprison. Given the significant interest of the individual in remaining on probation, see *Gagnon* v. *Scarpelli, supra; Morrissey* v. *Brewer,* 408 U. S. 471 (1972), the State cannot justify incarcerating a probationer who has demonstrated sufficient bona fide efforts to repay his debt to society, solely by lumping him together with other poor persons and thereby classifying him as dangerous.[11] This would be little more than punishing a person for his poverty.

Third, and most plausibly, the State argues that its interests in punishing the lawbreaker and deterring others from criminal behavior require it to revoke probation for failure to pay a fine or restitution. The State clearly has an interest in punishment and deterrence, but this interest can often be

---

[11] The State emphasizes several empirical studies suggesting a correlation between poverty and crime. *E. g.,* Green, Race, Social Status, and Criminal Arrest, 35 Am. Sociological Rev. 476 (1970); M. Wolfgang, R. Figlio, & T. Sellin, Delinquency in a Birth Cohort (1972).

served fully by alternative means. As we said in *Williams*, 399 U. S., at 244, and reiterated in *Tate*, 401 U. S., at 399, "[t]he State is not powerless to enforce judgments against those financially unable to pay a fine." For example, the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine. Justice Harlan appropriately observed in his concurring opinion in *Williams* that "the deterrent effect of a fine is apt to derive more from its pinch on the purse than the time of payment." 399 U. S., at 265. Indeed, given the general flexibility of tailoring fines to the resources of a defendant, or even permitting the defendant to do specified work to satisfy the fine, see *Williams, supra,* at 244, n. 21, a sentencing court can often establish a reduced fine or alternative public service in lieu of a fine that adequately serves the State's goals of punishment and deterrence, given the defendant's diminished financial resources. Only if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a probationer who has made sufficient bona fide efforts to pay.

We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply

because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.[12]

## III

We return to the facts of this case.   At the probation revocation hearing, the petitioner and his wife testified about their lack of income and assets and of his repeated efforts to obtain work.   While the sentencing court commented on the availability of odd jobs such as lawnmowing, it made no finding that the petitioner had not made sufficient bona fide efforts to find work, and the record as it presently stands would not justify such a finding.   This lack of findings is understandable, of course, for under the rulings of the Georgia Supreme Court[13] such an inquiry would have been irrelevant to the constitutionality of revoking probation.   The State argues that the sentencing court determined that the petitioner was no longer a good probation risk.   In the absence of a

---

[12] As our holding makes clear, we agree with JUSTICE WHITE that poverty does not insulate a criminal defendant from punishment or necessarily prevent revocation of his probation for inability to pay a fine.   We reject as impractical, however, the approach suggested by JUSTICE WHITE.   He would require a "good-faith effort" by the sentencing court to impose a term of imprisonment that is "roughly equivalent" to the fine and restitution that the defendant failed to pay.   *Post,* at 675.   Even putting to one side the question of judicial "good faith," we perceive no meaningful standard by which a sentencing or reviewing court could assess whether a given prison sentence has an equivalent sting to the original fine.   Under our holding the sentencing court must focus on criteria typically considered daily by sentencing courts throughout the land in probation revocation hearings: whether the defendant has demonstrated sufficient efforts to comply with the terms of probation and whether nonimprisonment alternatives are adequate to satisfy the State's interests in punishment and deterrence.   Nor is our requirement that the sentencing court consider alternative forms of punishment a "novel" requirement.   In both *Williams* and *Tate,* the Court emphasized the availability of alternative forms of punishment in holding that indigents could not be subjected automatically to imprisonment.

[13] See cases cited in n. 5, *supra.*

determination that the petitioner did not make sufficient bona fide efforts to pay or to obtain employment in order to pay, we cannot read the opinion of the sentencing court as reflecting such a finding. Instead, the court curtly rejected counsel's suggestion that the time for making the payments be extended, saying that "the fallacy in that argument" is that the petitioner has long known he had to pay the $550 and yet did not comply with the court's prior order to pay. App. 45. The sentencing judge declared that "I don't know any way to enforce the prior orders of the Court but one way," which was to sentence him to imprisonment. *Ibid.*

The focus of the court's concern, then, was that the petitioner had disobeyed a prior court order to pay the fine, and for that reason must be imprisoned. But this is no more than imprisoning a person solely because he lacks funds to pay the fine, a practice we condemned in *Williams* and *Tate.* By sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turned a fine into a prison sentence.

We do not suggest by our analysis of the present record that the State may not place the petitioner in prison. If, upon remand, the Georgia courts determine that petitioner did not make sufficient bona fide efforts to pay his fine, or determine that alternative punishment is not adequate to meet the State's interests in punishment and deterrence, imprisonment would be a permissible sentence. Unless such determinations are made, however, fundamental fairness requires that the petitioner remain on probation.

### IV

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUSTICE POWELL, and JUSTICE REHNQUIST join, concurring in the judgment.

We deal here with the recurring situation where a person is convicted under a statute that authorizes fines or imprisonment or both, as well as probation. The defendant is then fined and placed on probation, one of the conditions of which is that he pay the fine and make restitution. In such a situation, the Court takes as a given that the State has decided that imprisonment is inappropriate because it is unnecessary to achieve its penal objectives. But that is true only if the defendant pays the fine and makes restitution and thereby suffers the financial penalty that such payment entails. Had the sentencing judge been quite sure that the defendant could not pay the fine, I cannot believe that the court would not have imposed some jail time or that either the Due Process or Equal Protection Clause of the Constitution would prevent such imposition.

Poverty does not insulate those who break the law from punishment. When probation is revoked for failure to pay a fine, I find nothing in the Constitution to prevent the trial court from revoking probation and imposing a term of imprisonment if revocation does not automatically result in the imposition of a long jail term and if the sentencing court makes a good-faith effort to impose a jail sentence that in terms of the State's sentencing objectives will be roughly equivalent to the fine and restitution that the defendant failed to pay. See *Wood* v. *Georgia*, 450 U. S. 261, 284–287 (1981) (WHITE, J., dissenting).

The Court holds, however, that if a probationer cannot pay the fine for reasons not of his own fault, the sentencing court must at least consider alternative measures of punishment other than imprisonment, and may imprison the probationer only if the alternative measures are deemed inadequate to meet the State's interests in punishment and deterrence.

*Ante*, at 672–673. There is no support in our cases or, in my view, the Constitution, for this novel requirement.

The Court suggests, *ante*, at 673, n. 12, that if the sentencing court rejects nonprison alternatives as "inadequate," it is "impractical" to impose a prison term roughly equivalent to the fine in terms of achieving punishment goals. Hence, I take it, that had the trial court in this case rejected nonprison alternatives, the sentence it imposed would be constitutionally impregnable. Indeed, there would be no bounds on the length of the imprisonment that could be imposed, other than those imposed by the Eighth Amendment. But *Williams* v. *Illinois*, 399 U. S. 235 (1970), and *Tate* v. *Short*, 401 U. S. 395 (1971), stand for the proposition that such "automatic" conversion of a fine into a jail term is forbidden by the Equal Protection Clause, and by so holding, the Court in those cases was surely of the view that there is a way of converting a fine into a jail term that is not "automatic." In building a superstructure of procedural steps that sentencing courts must follow, the Court seems to forget its own concern about imprisoning an indigent person for failure to pay a fine.

In this case, in view of the long prison term imposed, the state court obviously did not find that the sentence was "a rational and necessary trade-off to punish the individual who possesse[d] no accumulated assets", *Williams* v. *Illinois*, *supra*, at 265 (Harlan, J., concurring). Accordingly, I concur in the judgment.