TAYLOR, Judge.
Paul Frederick Benedict was indicted for murder, a violation of § 13A-6-2, Code of Alabama 1975, but convicted by a jury of the lesser included offense of manslaughter. He was sentenced to ten years’ imprisonment and ordered to pay $18,571.70 restitution.
I
The appellant claims that the State’s evidence was insufficient to support a conviction. The testimony presented during the prosecution’s case-in-chief showed that the appellant and the deceased victim, Cynthia Diane Poole, were living together, and that on the night of June 17, 1984, they were at a local bar. The appellant called a cab for a ride home and waited for the deceased. The bar’s bouncer “assisted” the deceased out of the bar and into the cab. (According to the record, the deceased was an alcoholic who often became “stumbling drunk.”) She hit her head on the car while entering, but apparently was not injured. While en route, she began screaming and the appellant backhanded her across the face. After arriving at their apartment, the deceased again began screaming. The appellant stated that he “quieted down” the deceased by slapping her several times before he “blacked out.”
He further testified that when he awoke the next morning the deceased was unconscious on the bathroom floor. He called the emergency 911 number to have an ambulance sent to the apartment. The 911 operator also wanted to have the appellant talk to the police.
“911: I'm going to let you talk to the police department and you tell them what you told the ambulance service.
“CALLER: You don't need to send the police.
“911: Well, they need to make a report on it, all right?
“CALLER: No they don’t. No they don’t.
“911: Well, sir, if the lady’s beaten up, they need to make a police report on it.”
The appellant then hung up the telephone before the police were contacted.
The appellant gave conflicting versions of where he found the deceased. He told the ambulance service on the 911 number, “I have a lady here I just found on my front doorstep kind of beat up.” At the emergency room he told the investigating police officer that he had “found her lying in [sic] the living room floor.” During *867 interrogation, he stated he “found Cindy in the bathroom.”
The deceased had numerous injuries. Her eyes were blackened and nearly swollen shut. She had bruises on her arms, torso, legs, and knees. When the paramedics treated her at the apartment, her cheeks and temple regions were swollen, and her pupils were nonreactive, indicating a skull fracture or cerebral bleeding.
There was much testimony from neighbors regarding the appellant’s past physical abuse of the deceased, e.g., slapping, hitting, kicking her, dragging her by the hair, and even throwing her against a wall. The deceased was reportedly always bruised. Sometime after the fatal incident, the appellant went to a neighbor’s apartment and told the neighbor, “Look, she’s forcing me into things that I don’t want to do .... she’s forcing me to beat her and make her the second victim in this whole deal.”
At the sentencing, the trial judge stated, “I heard the same evidence as the jury in this case ... and I believe that you are very lucky to have received the verdict that you did.” The trial judge did not err in denying the appellant’s motion regarding insufficiency of the state’s evidence.
II
The appellant claims that the restitution order is unlawful in that the trial judge erred in ordering that the restitution be paid before the indigent appellant may be considered for parole. The court reporter’s understanding of the judge’s order is as follows:
"I’ll further order that you pay a victim compensation assessment of $1,640 in accordance with the Alabama Crime Victims Compensation Act adopted by the legislature of Alabama and approved by the governor in 1984; and I will further expressly order that, as a condition of you being released on parole by the State Board of Pardons and Parole, or as a condition of your early release from the time that I have sentenced to you [sic] by any agency of the state government, that you first make restitution in the case in the amount of $16,931.70, which is the aggregate amount of the medical expenses incurred in connection with treatment of the injuries sustained by Cynthia Diane Poole.” (Emphasis added.)
The judgment entry differs from the transcript in that it does not condition parole on prior payment of restitution.
The judgment entry in this record states as follows:
“Thereupon, after due consideration by the Court, it is hereby Ordered and Adjudged that the defendant, Paul F. Benedict, be sentenced to ten (10) years imprisonment in the State Penitentiary as punishment for his crime. The defendant is further Ordered to pay $1,640.00 as Victim Compensation and $16,931.70 as Restitution for a total of $18,571.70.”
Alabama has a long-established rule that where there is a conflict in the record between the court reporter’s transcript and a written judgment entry, the judgment entry controls. Keeton v. State, 280 Ala. 140, 190 So.2d 694 (1966); Turberville v. State, 348 So.2d 868 (Ala.Cr.App.), cert. denied, 348 So.2d 870 (Ala.1977). This is especially true when the sentence according to the court reporter’s transcript might be unlawful, while the judgment entry reflects a valid sentence. Williams v. State, 27 Ala. App. 542, 176 So. 471, cert. denied, 234 Ala. 622, 176 So. 472 (1937).
The restitution statutes provide for payment of restitution while in prison in some instances. Specifically, § 15-18-71, Code of Alabama 1975, reads:
“When a defendant is sentenced to a term of imprisonment, the order of restitution shall be enforceable during the period of imprisonment when the defendant has income.”
Section 15-18-72(b) provides:
“When the defendant is sentenced to the penitentiary by the court, and the court orders restitution, it shall be made a condition of his parole that restitution be made.”
*868 Rule 10, Temporary Rules of Criminal Procedure, entitled “Fines and Restitution,” provides in paragraph (a) “Imposition of a Fine or Restitution,” for the court ordering restitution to consider the following in determining whether to order restitution and in determining the amount:
“(1) Whether there are particular reasons which make a fine or restitution appropriate as a corrective measure for the defendant;
“(2) The financial resources and obligations of the defendant and the burden that payment of a fine or restitution will impose;
“(3) The ability of the defendant to pay a fine or make restitution on an installment basis or on other conditions to be fixed by the court;
“(4) The extent to which payment of a fine will interfere with the ability of the defendant to make restitution or reparation to the victim of the crime; and
“(5) The amount of gain derived by the defendant or loss sustained by the victim as a result of defendant’s commission of the offense, which amount shall be determined by the court from evidence presented at the sentence hearing if not stipulated by the parties.”
Subparagraph (g), “Incarceration for Nonpayment of Fine or Restitution,” reads:
“(1) Incarceration shall not automatically follow the nonpayment of a fine or restitution. Incarceration should be employed only after the court has examined the reasons for nonpayment. After consideration of the defendant’s situation, means, and conduct with regard to the nonpayment of the fine or restitution, the court shall determine the period of any incarceration in default of payment of the fine or restitution, subject to the following limitations:
“(i) In no event shall such period of incarceration exceed one day for each fifteen dollars ($15.00) of the fine or restitution.
“(ii) If the fine was imposed or restitution ordered in connection with a felony, the period may not exceed one year.”
These provisions were carefully drawn to conform to constitutional strictures. The United States Supreme Court in Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), held:
“We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State’s interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine.”
It does not appear that procedures were followed in this case to determine appellant’s ability to pay. Consequently, the order as reported in the transcript would have been erroneous. Since, however, the judgment entry was valid, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in result only.