[No. A080334. First Dist., Div. Three. Jan. 11, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA FAYE LAWSON, Defendant and Appellant.

**COUNSEL**

Robert Bryzman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman, Sharon G. Birenbaum and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARRILLI, J.**—The question we must decide in this probation revocation case is whether the court unlawfully sentenced appellant Linda Faye Lawson to prison "solely because of [her] financial inability to pay [the restitution] imposed on [her] as a condition of probation" (*In re Antazo* (1970) 3 Cal.3d 100, 108 [89 Cal.Rptr. 255, 473 P.2d 999]), or properly sentenced her to prison because she willfully refused to pay restitution as ordered (*Bearden* v. *Georgia* (1983) 461 U.S. 660, 668, 672 [103 S.Ct. 2064, 2070, 2072-2073, 76 L.Ed.2d 221]) and engaged in other improper conduct. Viewing the record in the light most favorable to the judgment, we conclude the trial court sentenced appellant to prison for proper reasons. Consequently, we affirm the judgment.

I

FACTS

In August 1992, appellant pleaded guilty to one count of felony welfare fraud based on the fact she had improperly received approximately $21,000 in Aid to Families With Dependent Children (AFDC) and food stamp benefits (Welf. & Inst. Code, § 10980, subd. (c)(2)).[1] At sentencing, the trial court placed appellant on five years' probation and ordered she pay restitution "as determined by probation." The court specifically stated that if appellant and the probation department could not agree on the appropriate amount of restitution, then the court would hold a hearing to decide that issue. Appellant was also ordered to pay attorney's and probation fees.

[1]The charge was based on the fact appellant had not reported her husband's income when she applied for welfare benefits. From 1988 to 1991 she received approximately $21,226 in AFDC and food stamp benefits to which she was not entitled.

The probation department set the amount of restitution at $21,226.[2] The court subsequently monitored appellant's payment of restitution at a series of hearings. By August 1993, appellant had made only $380 in payments, and all of those checks were returned for insufficient funds. On August 25, 1993, the court ordered appellant to pay restitution to the welfare department at the rate of $50 per month. By June 1994, appellant had not made *any* payments toward restitution or her probation and attorney's fees. On June 21, 1994, appellant showed the court receipts for a total of $170 in payments she made that month. The court ordered her to continue to make regular payments and to prove she had made those payments by bringing the receipts to court.

By April 1995, appellant had finally paid her probation and attorney's fees (a total of $400). However, the welfare department's records showed it had received only three $200 checks from appellant; one of those checks cleared, one was written on a closed account, and one check was returned directly to appellant at her request after she obtained a receipt for it. There was evidence appellant used the receipts she obtained for her bogus "payments" to prove to the court she had made payments. The probation officer recommended that the court find appellant in violation of her probation and revoke and reinstate her probation on modified terms.

On May 17, 1995, appellant admitted she had violated her probation by writing a check on an account with insufficient funds. The court revoked her probation and reinstated it on the following additional terms: probation to be extended for an additional two years, appellant to serve one hundred eighty days in county jail, and appellant to make payments of $150 per month toward restitution. The court specifically ordered that appellant was to make her restitution payments to the probation department in cash or by money order only.

Over the next two years, appellant, although employed, failed to make her $150 per month restitution payments as scheduled.

On May 20, 1997, the probation department filed a progress report recommending that the court revoke appellant's probation. As grounds for revocation, the probation department alleged that in February 1997, appellant pleaded guilty in federal court to theft of government property (18 U.S.C. § 641). This charge was based on appellant having written a check for cash at Travis Air Force Base that was later returned for insufficient funds. As additional grounds for revocation, the probation department alleged appellant had failed to pay $150 per month in restitution as ordered by the court.

---

[2]According to defense counsel, restitution was originally set at $5,343, but was corrected in April of 1995 to reflect the accurate amount of $21,226. The $5,343 figure was based on only one of the original counts in the complaint against appellant, and did not include all losses.

With respect to the failure to make restitution, the probation department alleged: "In the 57 months the Def. has been on prob[ation] she has only repaid $1866.00 in restitution of the original amount of 21,266.00.[3] . . . Def. has reported to Fed. Prob. as having a combined net [monthly] income w/her spouse (who is the co-def in this case) of $4900.00. She reports her household expenses as $2420.00 leaving a disposable income of $2480. *It is clear the Def. could of [sic] made the court ordered mo. payment of $150.00 and has chosen not to*." (Italics added.)

At a June 2, 1997 hearing on the request to revoke probation, defense counsel raised some concerns about appellant's mental health and asked for a short continuance. The court stated: "Well, I don't know about that. All I know is in reviewing this file over the weekend and reviewing the report . . . and having in mind her monthly income together with monthly expenses, it's hard for me to believe—and the only reason she was granted probation five years ago almost was to retain the restitution of some $21,000, of which there's still a balance owing of over $16,000. . . . But they're making $4900 a month in income, if the report I have is accurate. [¶] . . . . *[T]his Court's intention is to send her to state prison for as long as I can under the facts of the case. And it's understood the only thing that will prevent that is making that restitution in full.* [¶] I will continue this for a period of two weeks . . . . *She can make those arrangements to obtain those moneys. That's the only way she's going to avoid going to prison as far as this Court is concerned.* [¶] As far as the matter in the federal court . . . that appears to be a relatively minor matter . . . . *[It] doesn't concern me as much as the willful failure not to repay the restitution that was ordered.*" (Italics added.)

On July 22, 1997, appellant admitted she had violated the conditions of her probation (that she obey all laws) by suffering a federal misdemeanor conviction for passing a bad check. Although appellant did not admit the alternative allegation that she had failed to pay restitution as ordered, she agreed the court could consider this allegation in passing sentence.[4]

Thereafter, the probation department filed a supplemental report in which it indicated appellant had not made any further payments to the welfare department. At a July 31, 1997, hearing on the supplemental report, the court indicated it intended to send appellant to state prison. The court stated: "I

[3]The welfare department was to receive another $2,667 in restitution in the form of child support payments appellant's former husband had paid to "DA Family Support."

[4]As defense counsel put it, the agreement was "pretty much akin to a *Harvey [People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396]] waiver. Although she's not admitting the restitution issue, she's agreeing that the court and the D.A. consider that at the time of the sentencing on the probation violation."

just don't see that we've ever done much to collect any moneys, and that's the reason we put everything over and over." At the hearing, the prosecutor represented that the probation department was joining the People's recommendation for the upper prison term. The prosecutor indicated the probation department had learned appellant was living in an expensive area of Fairfield, and believed appellant was intentionally attempting to hide her address and assets.

In response, defense counsel stated appellant was under the mistaken impression that $600 per month child support payments she had assigned to the welfare department were being used to pay her restitution. In fact, those payments were being used to repay the *legitimate* welfare benefits appellant had received over the years; they were not applied against the amount of restitution appellant herself owed for her fraudulent conduct. According to defense counsel, appellant only recently learned this.

The court indicated it did not believe this explanation, and further noted appellant had been under orders for more than two years to make restitution payments of $150 per month but had not done so. The court finally stated it was going to put the matter over one week to "see how much money you can come up with between now and then" and to allow the court time to review the entire file. The court indicated it was "leaning toward state prison" but that it would give appellant the benefit of the doubt and review the file before it passed sentence. When defendant asked how much she would have to come up with at the next hearing, the prosecutor and defense counsel noted there was a dispute whether appellant still owed $19,411 or closer to $16,000. The court stated: "Let's assume it's 16 [thousand]. If you had 16, I would very much consider that."

Appellant appeared in court one week later, on August 7, 1997. At that appearance defense counsel represented to the court that appellant and her husband had applied for a $10,000 personal loan and were waiting to hear whether they had been approved for the loan. The court continued the matter two weeks to allow appellant time to obtain the loan funds.

Appellant made her next—and final—court appearance two weeks later. Defense counsel explained appellant had not obtained the $10,000 loan, and was only able to come up with $500 to pay toward restitution. At that hearing the trial court learned appellant had misrepresented the status of her loan application on August 7, 1998. According to a prosecution investigator, the bank officer who processed the application contacted appellant on August 5th or 6th to tell her the loan had been denied. According to the loan application appellant signed, she and her husband had a gross monthly

income of $6,100: $4,000 per month for her husband (a union construction laborer), and $2,100 per month for her.

In sentencing appellant to prison, the court noted appellant had been given "chance after chance" but had failed to pay restitution. Moreover, she had lied to the court at the previous hearing when she represented she had a loan application pending. The court noted it was not putting appellant in prison "for nonpayment of a debt. That's against our constitution. But this defendant is totally failing to comply with the orders of the court. She's totally failing to follow the law, and so I don't see any need or any reason why she should be continued on probation. I'll incorporate everything I said before. But having read this, there's no reason for her to be on probation anymore. She'll just have to do her time, and the matter will be behind her." The court thereafter denied reinstatement of probation, and sentenced appellant to the midterm of two years for her violation of Welfare and Institutions Code section 10980, subdivision (c)(2) (welfare fraud). The court awarded appellant 179 days credit for time served, and appellant filed this timely appeal.

II

DISCUSSION

Appellant contends the trial court violated her right to equal protection and due process because it conditioned her right to avoid prison on payment of all or most of the restitution still owing, without regard to her ability to pay. In essence, appellant is contending the trial court sentenced her to prison *because* she did not have the financial resources to pay the remaining restitution in one lump sum, in effect discriminating against her because of her lack of wealth.

We disagree with appellant's characterization of the facts. In our view, the trial court did not sentence appellant to prison because she lacked the financial resources to pay most or all of the restitution in one lump sum. Instead, the court sentenced appellant to prison because: 1) she willfully failed to pay court ordered restitution for more than five years despite having the ability to do so; 2) she repeatedly lied to the court concerning the payments she had made and the efforts she was making to pay restitution;[5] and 3) she continued to violate the law in other respects unrelated to the

---

[5]In her reply brief, appellant contends the trial court could not rely on the evidence she misrepresented the status of her loan application at the August 7 hearing because appellant objected to that evidence as being "unfair." On appeal, appellant contends this evidence was

payment of restitution. In these circumstances, the trial court acted well within its discretion when it sentenced appellant to prison.

Appellant relies primarily on two cases to make her equal protection and due process arguments: *In re Antazo, supra,* 3 Cal.3d 100 (*Antazo*) and *Bearden* v. *Georgia, supra,* 461 U.S. 660 (*Bearden*). As we explain, neither case supports appellant's contention that the trial court committed constitutional error when it sentenced her to prison.

In *Antazo, supra,* 3 Cal.3d 100, two defendants were convicted of arson. The trial judge sentenced the men to prison on the condition each pay a fine of $2,500 plus a penalty assessment of $625, or in lieu of payment serve one day in jail for each $10 unpaid. While one defendant was able to pay the fine and did so, Antazo was indigent and was jailed because he was unable to pay the fine and penalty assessment. (*Id.* at pp. 105-106.) The Supreme Court ordered Antazo discharged from custody. ▮ The court reasoned: "[A] sentence to pay a fine, together with a direction that a defendant be imprisoned until the fine is satisfied, gives an advantage to the rich defendant which is in reality denied to the poor one. 'The "choice" of paying [a] $100 fine or spending 30 days in jail is really no choice at all to the person who cannot raise $100. The resulting imprisonment is no more or no less than imprisonment for being poor, . . .' [Citation.] To put it in another way and in the context of the present case, when a fine in the same amount is imposed upon codefendants deemed equally culpable with the added provision for their imprisonment in the event of its nonpayment, an option is given to the rich defendant but denied to the poor one." (3 Cal.3d at p. 108.) The Supreme Court concluded that, in this context, wealth is a suspect classification and imprisoning indigents for nonpayment of fines was not necessary to further a compelling state interest. (*Id.* at pp. 108-115.) Consequently, the court concluded the stereotypical sentence of "30 days or 30 dollars" denies

hearsay and the court could not rely on it. However, appellant failed to object to this evidence on hearsay grounds and has therefore waived that issue on appeal. (Evid. Code, § 353, subd. (a); *People* v. *Garceau* (1993) 6 Cal.4th 140, 179 [24 Cal.Rptr.2d 664, 862 P.2d 664].) Appellant also contends the trial court could not rely on this new allegation because it was presented in a letter at the August 21, 1997, hearing, not in the revocation petition or probation report, and consequently appellant did not have proper notice of it. The cases appellant cites to support this contention involve failure to give notice of grounds to revoke probation. (*People* v. *Self* (1991) 233 Cal.App.3d 414, 419 [284 Cal.Rptr. 458]; *People* v. *Mosley* (1988) 198 Cal.App.3d 1167, 1173 [244 Cal.Rptr. 264].) Since appellant had previously admitted she violated probation by suffering a new conviction, the trial court clearly did not rely on the new allegation to *revoke* her probation. Appellant has not cited any authority which indicates it was improper for the trial court to consider this new information in deciding whether to sentence appellant to prison, *after* her probation was revoked on other grounds. But even if it were improper, the trial court had sufficient reasons, unconnected to the loan application, to justify its decision to sentence appellant to prison. As such, any error would be harmless.

an indigent defendant his right to equal protection under the law. (*Id.* at pp. 108-109, 115.)

The *Antazo* court made two things clear: first, a trial court must give an indigent who would pay his fine, if he could, an alternative comparable to that afforded a solvent offender; second, the court may imprison an indigent for failing to carry out the alternative he has agreed to. "When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain[,] the offender's *indigency* ceases to be dispositive· and he may, consistently with the mandate of the equal protection clause, be relegated to 'working out' his fine by imprisonment." (*Antazo, supra*, 3 Cal.3d at p. 116, italics in original; see also *id.* at p. 114 ["We have no doubt that this practice [imprisonment] may properly be used to compel payment of fines in proper cases. [Citations.] Proper use of imprisonment as a coercive mechanism presupposes an ability to pay and a contumacious offender."].)

Moreover, the *Antazo* court stressed that in the case before it the record showed the defendant failed to pay the fine *solely* because of his indigence. The court stated: "In the case before us, the record shows beyond any contradiction that although imposition of sentence was suspended and petitioner was granted probation, he was unable to pay the fine and penalty assessment fixed by the court as a condition of probation, *solely* because he was an indigent. Under the court's order, he incurred imprisonment, not because he refused to comply with these conditions of his probation, but simply because he was unable to do so." (*Antazo, supra*, 3 Cal.3d at p. 115, italics in original.)

 Here, we cannot say the trial court imprisoned appellant "because of [her] inability, due solely to [her] indigency, to pay" restitution. (*Antazo, supra*, 3 Cal.3d at p. 115.) Rather, the record indicates the trial court sentenced appellant to prison because, despite repeated efforts to accommodate appellant and to tailor her payments to her financial situation, appellant willfully refused to make payments even though she had the ability to make them. In short, this is a case where the offender defaulted or otherwise failed to meet the conditions of the particular alternative to which she agreed, despite her financial ability to meet those obligations. (*Id.* at p. 116.)

Moreover, there is no evidence appellant was indigent. Instead, the evidence—which appellant does not dispute—showed that she and her codefendant husband had net income of $4,900 per month. Appellant does not dispute

that this income would have made it possible for her to make the $150 monthly payments the court ordered. The court could infer, as it did, that appellant failed to make those payments not because she was financially unable to do so, but because she *chose* not to make them.

Nevertheless, appellant contends the trial court committed constitutional error when it chose to give her one last chance to avoid imprisonment by paying most or all of the outstanding restitution in a lump sum.

Although it does appear the trial court would have foregone a prison sentence had appellant paid at least a substantial portion of the restitution owing,[6] we do not believe the trial court violated appellant's rights to due process or equal protection by giving her this one last chance to avoid imprisonment. Clearly, as early as June 2, 1997, the court had ample reason to sentence appellant to prison for her willful failure to pay restitution. However, the court gave her one last chance to avoid imprisonment. We fail to see how providing appellant with a last chance to avoid imprisonment converted what would have been a lawful sentence into an unlawful sentence based on appellant's inability to pay restitution in a lump sum.

Moreover, although appellant contends throughout her brief that the trial court ordered lump-sum restitution without considering her "ability to pay," there was evidence in the record appellant *did* have the ability to make a large lump-sum payment. The evidence, which appellant never disputed, shows she and her husband were far from indigent. Appellant herself indicated her combined monthly family income was at least $4,900 and as much as $6,100, and that their monthly expenses were only $2,420. Clearly, the trial court could infer from this information that appellant had the ability, by obtaining a loan or otherwise, to make a large lump-sum payment toward restitution.[7]

The United States Supreme Court's decision in *Bearden, supra,* 461 U.S. 660, also fails to support appellant's position. In *Bearden,* a Georgia court

---

[6]We infer this from the court's statements that "the only thing that will prevent [the court from imposing a prison sentence] is making that restitution in full. [¶] . . . She can make those arrangements to obtain those moneys. That's the only way she's going to avoid going to prison as far as this Court is concerned." Later, the court indicated it would give appellant additional time to come up with a lump-sum restitution, and suggested $16,000 would be sufficient. Finally, the court granted appellant a two-week continuance to see if she could obtain a $10,000 loan, indicating that even this amount of restitution would be sufficient.

[7]The court was not required to hold a hearing specifically to determine appellant's ability to pay. "The requirements of due process are met if a defendant is afforded an opportunity to present evidence on his ability to pay. . . . There is no requirement that a court make an express finding of the ability to pay, and the court may properly base its restitution order on the probation officer's report which recommends restitution. [Citation.] As long as the defendant is given an opportunity to respond to any matters in the probation report regarding restitution, due process is satisfied. [Citations.]" (*People* v. *Campbell* (1994) 21 Cal.App.4th

ordered the defendant to pay a fine and restitution as a condition of probation. Although the defendant made one $200 payment, he was unable to pay the $550 balance and the court revoked probation and sentenced him to prison. The record showed the defendant was unable to find a job and had no assets or income, and thus had no ability to pay the fine. (461 U.S. at pp. 662-663 [103 S.Ct. at p. 2067].) ▇ The Supreme Court held that, under the due process clause of the Fourteenth Amendment, a trial court may not revoke an indigent's probation for failure to pay a fine or restitution "absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment [are] inadequate." (*Id.* at pp. 665-666 [103 S.Ct. at p. 2069].) However, the Supreme Court made clear that "[i]f the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. [Citation.] Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense." (*Id.* at pp. 668-669 [103 S.Ct. at p. 2070].) It is only when the probationer has made "all reasonable efforts" to pay restitution that it becomes fundamentally unfair to revoke probation without considering other means of punishment. (*Id.* at p. 669 [103 S.Ct. at p. 2071].)

▇ Here, the trial court could reasonably conclude appellant had not made "all reasonable efforts" to pay restitution. To the contrary, the record showed appellant continued to pay the minimum she could get away with and, even then, misrepresented her efforts to the trial court. In nearly five years, appellant paid only $1,866 in restitution, even though she had a family income of at least $4,900 per month. As the probation department pointed out "It is clear that Def. could of [*sic*] made the court ordered mo. payment of $150.00 and has chosen not to." The evidence shows appellant "willfully refused to pay the fine or restitution when [s]he ha[d] the means to pay," or, at minimum, that she had "insufficient concern for paying the debt [s]he owes to society for h[er] crime." (*Bearden, supra,* 461 U.S. at pp. 668-669 [103 S.Ct. at p. 2070].)

In sum, the record in this case shows the trial court sentenced appellant to prison because she willfully refused to pay restitution as ordered and for other improper conduct, not because she lacked the financial ability to pay the restitution imposed on her as a condition of probation.

825, 831 [26 Cal.Rptr.2d 433].) There is no question appellant had the opportunity to respond to the matters in the probation reports regarding restitution, and chose not to.

## III

## DISPOSITION

The judgment is affirmed.

Phelan, J.,* and Corrigan, Acting P. J., concurred.

A petition for a rehearing was denied February 4, 1999, and appellant's petition for review by the Supreme Court was denied April 14, 1999.

---

*Retired Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.