BART F. VIRDEN, Judge
The Crawford County Circuit Court revoked appellant Joseph Makinson's suspended imposition of sentence (SIS) upon finding that he had violated the terms and conditions of his suspended sentence by failing to pay child support, restitution, a fine, costs, and fees. He was sentenced to serve six months in the county jail. Makinson argues that the trial court erred in revoking his suspended sentence because his failure to make payments was not willful. We affirm as modified.
I. Procedural History
On June 10, 2016, Makinson pleaded guilty to nonsupport, a Class A misdemeanor, received a one-year SIS, and was ordered to pay $1,000 in restitution, along with a fine, costs, and fees. He was also ordered to resume paying child support as previously ordered in Case No. 17DR-08-46 as a term or condition of his SIS.
On August 8, 2016, the State filed a petition to revoke, alleging that Makinson had failed to make any payments toward his restitution, fine, costs, and fees, leaving a balance of $1,490. The State also alleged that Makinson had made no child-support payments since April 7, 2016.
On May 1, 2017, the trial court found Makinson guilty of violating the terms and conditions of his SIS, revoked his SIS, sentenced him to serve six months in the county jail followed by a six-month SIS, and ordered him to pay his restitution, fine, costs, and fees to the Crawford County Prosecuting Attorney's Office in installments of $65 a month beginning sixty days after his release from jail. Makinson was also ordered to resume paying child support as previously ordered in Case No. 17DR-08-46.
On August 17, 2017, the State filed another petition to revoke, alleging that Makinson had been released from jail on May 18, 2017, but that he had made no payments toward his restitution, fine, costs, and fees and that he had made only one child-support payment of $40 in June 2017, leaving an arrearage of $5,870.41. A hearing on the State's petition was held January 31, 2018.
II. Revocation Hearing
Lori Davis, an employee of the Office of Child Support Enforcement, testified that, from January 2017 to August 2017, Makinson had made only one payment of $40 and that he had made two similar payments in 2016. She said that the current child-support arrearages were $11,412.51.
Lisa Whetstine, the fine and restitution coordinator for the prosecuting attorney's office, testified that Makinson had made no payments toward his restitution, fine, costs, and fees, leaving a balance of $1,490.
Makinson testified that he works at Sonic and that his "take-home" pay is about $180 to $200 every two weeks. Makinson testified that he lives in a homeless community in Fayetteville. He said that the police had ordered him and others to leave the area several times and finally destroyed their tents. He said that he had to *294 buy a new tent and "start all over again." Makinson testified that his money was spent supporting himself and "anyone who wanted to eat at camp." He also said that both Crawford and Sebastian Counties were taking child support out of his paycheck and that he had contacted his ex-wives who said that they had been receiving child support every two weeks. Makinson acknowledged that he had been ordered to begin making payments on his restitution, fine, costs, and fees sixty days after he was released from jail, which he thought was the end of May or first of June. On cross-examination, he conceded that he had been released on May 18, 2017, meaning that he should have begun making payments on July 18, 2017. According to Makinson, he had called the prosecutor's office on August 1, 2017, to find out when his payment was due and was told that a warrant had already been issued for his arrest.[1] He stated that he had called again to set up a payment plan so that he could pay less because "something is better than nothing" but was told that nothing could be done because of the warrant.
At the conclusion of the hearing, the trial court revoked Makinson's SIS and sentenced him to serve six months in the county jail. The trial court also ordered Makinson to make payments on his child support, restitution, fine, costs, and fees. To the extent that the trial court ordered Makinson to make these payments "as a term and condition of suspended sentence," we note that the trial court did not suspend imposition of any sentence nor did it choose to extend the period of suspension. We thus modify the sentencing order to omit any reference to an SIS.
III. Standard of Review
Because the burden of proof in a revocation proceeding is less than that required to convict in a criminal trial, evidence that is insufficient for a conviction may be sufficient for a revocation. Collier v. State , 2013 Ark. App. 643. When the sufficiency of the evidence is challenged on appeal, we will not reverse the trial court's decision to revoke unless its findings are clearly against the preponderance of the evidence. Id. Because the determination of the preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the trial court to decide these matters. Id. Only one violation is required to sustain a revocation. Vangilder v. State , 2018 Ark. App. 385, 555 S.W.3d 413.
When the alleged violation of conditions is a failure to make payments as ordered, the State has the burden of proving by a preponderance of the evidence that the failure to pay was inexcusable. Bohlman v. State , 2013 Ark. App. 162. The burden of proof does not shift from the State; however, once the State has introduced evidence of nonpayment, the burden of going forward does shift to the defendant to offer some reasonable excuse for the failure to pay. Id. If any assertion of inability to pay is made, the State can then carry its burden in various ways, e.g., it can undermine the probationer's credibility, or it can show a lack of effort, such as a failure to make bona fide efforts to seek employment or to borrow money to make payments. Id. In determining whether to revoke a suspended sentence for nonpayment, the court is required to consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Id.
*295 IV. Discussion
Makinson argues that, although the State offered proof of nonpayment through the ledgers from the Office of Child Support Enforcement and the prosecuting attorney's office, the State did not provide testimony from the recipients of the funds stating that the funds had not been received. He contends that, once the burden shifted to him, he offered a reasonable excuse for his nonpayment and that he was clearly willing to pay but could not. He argues that the State did not show (1) that he could have paid but did not, (2) that he was not seeking employment, or (3) that he was spending his money inappropriately; and the State offered no evidence of his other sources of income, his assets, or his expenses. Citing Bearden v. Georgia , 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), he argues that a defendant cannot be punished by imprisonment solely because of a failure to pay.
Makinson likens his case to Phillips v. State , 101 Ark. App. 190, 272 S.W.3d 123 (2008). Phillips had chronic obstructive pulmonary disease (COPD), and his only income was disability payments of $660 a month. He said that he paid $250 a month on rent, that his electric bill was approximately $100 a month, and that he paid between $43 and $63 a month for medication. He also said that he had paid off fines in Lonoke and Waldron and was paying a fine in Alma at the rate of $100 a month. The trial court said from the bench that it was not considering whether Phillips's failure to pay was inexcusable because "if you enter a plea agreement and you say you will pay, and you don't pay as agreed then you violated the terms of that agreement." Id. at 192, 272 S.W.3d at 124. In reversing the revocation, this court held that the trial court erred in not considering whether Phillips's failure to pay was inexcusable when his expenses left him with only $60 a month.
Phillips is distinguishable. The trial court made no similar statement that it was not considering whether Makinson's failure to pay was inexcusable. Makinson said that, after child support was taken out of his paycheck, he took home approximately $400 a month. Makinson lives in a tent, and there was no evidence that he paid rent or utilities. He said that he spent his money in part on others at the homeless community.
The trial court was not required to believe Makinson's testimony that he thought his child support was being withheld from his paychecks, that his ex-wives told him they had been receiving child support, and that Makinson had tried to make payment arrangements with the prosecutor's office but could not because a warrant had already been issued for his arrest before August 1, 2017. The State showed Makinson's willfulness in failing to pay what he owed when it undermined his credibility in this regard. We defer to the trial court on matters of credibility and weight. We cannot say that the trial court's decision to revoke Makinson's suspended sentence was clearly against the preponderance of the evidence.
Affirmed as modified.
Gladwin and Vaught, JJ., agree.

The record reflects that a warrant for Makinson's arrest was issued August 24, 2017, and that Makinson was served with the warrant on December 9, 2017.