[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision re: Violation of probation
An information charging the defendant with violation of probation was heard by the court on November 4, 1999. The defendant had pled guilty on August 22, 1994 to Larceny I in violation of § 53a-122 of the General Statutes. She was sentenced to seven years of imprisonment, the execution of the sentence was suspended with five years probation. In addition to the normal conditions of probation she was ordered to make restitution for the $30,427.61 she had embezzled from her employer over a period of years. As the period of probation was ending, the defendant having paid only $460 in restitution, the last payment occurring November 13, 1997, the office of adult probation sought and obtained a warrant on August 5, 1999 for the arrest of the defendant. It is undisputed that the defendant has failed to pay $29,967.61.
The Acting Chief Probation Officer was called as a witness for the prosecution. He testified that he has only had personal involvement with this case since August of 1998. He said he made a telephone call to the home of the defendant and sent her a letter to which he received no response.
The unchallenged testimony supports a finding that the office of adult probation had the defendant sign a document called a CT Page 14600 Notice of Restitution Payment Procedure, which the court was asked to judicially notice, and did so by agreement of the parties. This document relates only to making sure the payments are made by money order or check to verify payment. Similarly, documents entitled Order of Probation and Conditions of Probation were judicially noticed. None of the documents prepared by probation specifies the amount of restitution, establishes a payment schedule or in anyway suggests a manner of fulfilling the court imposed obligation of restitution.
The fifty-two year old defendant testified that at the time of sentencing she was unemployed. She said she met with her first probation officer weekly for about six weeks. She indicates that the discussions of repayment consisted of ". . . pay whatever you can" and ". . . just make the payments as best you can." The Acting Chief Probation Officer testified that there were notes in his file which appears to state "[W]hat happened to our agreement to make weekly payments?" This statement was a file notation made by the first probation officer. There does not appear to have been any formal notice or letter reducing this issue to writing in the probation officer's file for no such document was offered into evidence. There was no further evidence offered showing an obligation of the probationer to report or pay.
The Acting Chief Probation Officer testified that his office does not inquire nor consider the defendant's ability to repay the restitution debt. There does not appear to have been any annual reviews set up to ascertain the defendant's ability to make restitution.
The court is aware that the office of adult probation is presently handling fifty-four thousand cases.[1] Each probation officer is handling approximately 270 cases, depending upon the nature of the offense. Both the public and judicial concern creates greater emphasis on the supervision of violent and sexual offenders. Nonetheless, there appears to have been no supervision whatsoever of this defendant after the first six weeks of supervision. This case does not demonstrate the kind of effective offender accountability and supervision which the court and the public may reasonably expect.
The defendant did produce at the violation hearing copies of her and her husbands's Internal Revenue Income Tax Returns for the years 1995, 1996, 1997, and 1998, together with a signed financial affidavit (JD-FM Rev. 9-91). Every bit of this evidence CT Page 14601 establishes that the defendant has been gainfully employed at the same local business, a gas station convenience store, for the past five years. Her earnings have steadily increased with the minimum wage from $15,685 in 1995 to annual earnings this year projected to be $ 21,500 this year. The defendant testified that she has had financial difficulties arising from her husband's medical difficulties. Her husband has only recently become eligible for Social Security Disability payments. The defendant and her husband can best be described as a working poor family.
From this evidence the court finds that:
1) Unless the debt were amortized over twenty years or more, which is not within the ability of the court or the office of adult supervision to do, the defendant did not have, nor does she presently have, the ability or earning capacity to make full restitution at any time since her conviction. Thus, the court cannot find that the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay. She does appear to be working within the range of a person with similar age, education and skills.
2) The office of adult probation did not supervise and monitor the defendant to ascertain her ability to pay nor did it establish even a nominal schedule of payments for the defendant. When the court and the victims look to the office of adult probation to monitor restitution, they have the right to expect that probation will physically meet with and review the probationer's financial condition at least once a year. Whether this standard should apply to all restitution orders this court does not decide. But where, as here, the defendant was convicted of a serious felony, the key component of the suspension of sentence being to allow for restitution, this court finds that the office of adult supervision must provide some supervision.
3) The defendant did have the ability to make modest, regular payments in good faith toward her restitution and she failed to do so. In this respect she has failed to satisfy one element of her probation.
 "The fourteenth amendment to the United States constitution requires that a sentencing court must inquire into the reasons for the failure to pay restitution in a revocation proceeding. `If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to CT Page 14602 acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay'" Bearden v. Georgia 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) cited in State v. Martinik, 1 Conn. App. 70, 71-72 (1983) 467 A.2d 1247 672.
 ORDER
Based upon the court's belief that alternate methods are available to "meet the State's interests in punishment and deterrence," the court finds that the defendant has violated the terms and conditions of her probation in that she has failed to make restitution. Accordingly, the court orders her probation to continue for an additional three years. As special conditions of her probation she is to make payments of $100 per month based upon her current financial condition. Additionally, she is to perform 100 hours of community service per year.
The amount of her monthly payments shall be reviewed periodically by the office of adult probation, but in no event less often than once a year, to determine her financial ability and to increase or decrease the payments from time to time based upon her then existing ability to make payments toward restitution.
The defendant is ordered to make available to the office of adult probation her pay stubs, W-2 Federal Wage and Tax statements, and to provide a signed release of wage information for all of her employers. She is further ordered to provide a signed financial statement in such form as may, from time to time, be directed.
Following the testimony in this case a hearing has been scheduled for November 24, 1999. Unless good cause is found to the contrary, this order shall be effective as of that date.
By the Court, CT Page 14603
Foley, J.