[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING RE PROBATION VIOLATION
On June 9, 1995, the probationer Charles Margolies was sentenced in Hartford Superior Court to a term of ten years' imprisonment, suspended after four years, with five years' probation. The probationer was convicted of having committed larceny in the first degree: a practicing attorney, he had stolen more than $71,000.00 from clients. Conditions of probation imposed by the sentencing court included restitution to the victims in the amount of $71,221.77, restitution "to begin of the fourth anniversary of probation".[1] The probationer was to make available to probation copies of "state and federal income tax" and to make "all assets available to probation." He was not to transfer any assets exceeding $100 of value without the permission of a Superior Court judge. He was to make good faith efforts to find employment within 60 days of his release from prison, and within thirty days of obtaining full-time employment probation was to assess his income and expenses and impose a payment schedule. Other conditions not applicable to the present dispute were also imposed. CT Page 9239
Mr. Margolies was released from prison in March, 1997, and met with a probation officer shortly thereafter. He signed a form including the conditions of probation; standard conditions were also imposed, of course. Through the humane efforts of volunteers he obtained housing rent-free at the Catholic Workers house in Hartford and he worked on developing his career. He applied for work with the post office, but his felony conviction disqualified him. He soon decided not to seek any full time employment immediately, but rather decided to go back to school to pursue an academic career in physics, specifically photonics. While living rent-free most of the time and board-free a great deal of the time, he attended classes and taught lab courses. In 1999, he taught courses at a community college on a part-time basis as well. His career goal appeared to be a combination of academic employment and giving seminars to those in private business. He grossed approximately $5,000 in 1998 and $10,000 in 1999. He paid approximately $40.00 in restitution in 1998 and $500.00 in 1999; another $100 was apparently paid in restitution after the warrant for violation of probation was issued.
A career counselor offered expert testimony to the effect that the course chosen by Mr. Margolies was a reasonable course for him to pursue, and one which was reasonably calculated to maximize income in the long run.
The state claims that the probationer violated conditions of his probation in a number of ways, and seeks revocation pursuant to § 53a-32
of the General Statutes. I now turn to consideration of the specific claimed violations in the long form information. In addition to the foregoing facts, other facts will be stated in reference to the specific claimed violations. The facts stated are found by a preponderance of the evidence.
The long form information accuses Margolies of violating the condition of restitution in the amount of $71,221.77 in full, and failing to comply with a payment plan requiring the payment of $1,187.02 per month. The evidence does not support the conclusion that there ever was a payment plan calling for the payment of $1,187.02. This allegation is, then, not proved.
The second accusation in the information accuses Margolies of failing to pay restitution as required and additionally claims that he failed to comply with a payment plan calling for payments of $200.00 per month. This claim requires some additional discussion.
Mr. Margolies had three probation officers during the time he was on probation. The third, Keith Beaupre, supervised Margolies from November, 1998, to February, 2000. Although it is fair to say that the probation CT Page 9240 was not intensely monitored, Beaupre several times warned Margolies of shortfalls in his restitution obligation. He had paid only a very small portion of a total due of over $71,000. In the course of a telephone conference in February, 1999, Margolies said that he was employed and that he would be paid at the end of the month. Beaupre then set up a payment plan whereby Margolies would send $200 at the end of each month, and Margolies agreed. Margolies sent only a portion of the agreed amounts until June, and then nothing after June until after the issuance of the warrant. I find, then, that the violation is proved.
The information further claims that Margolies violated his probation by failing to comply with the requirement that he provide copies of his "state and federal income tax." Margolies stated, and the state offered no evidence to the contrary, that he did not file returns during the time he was on probation, presumably because he did not meet the minimum adjusted gross income requirements. The state, however, claims that Margolies was obliged to provide copies of information such as Form W-2's that would be attached to returns if there had been returns. It is agreed that he did not supply such information. I find that the most reasonable interpretation of the phrase "state and federal income tax", while not entirely clear, compels a conclusion that the phrase refers to tax returns. I find that this violation is not proved.
The state further claims that Margolies did not "make all assets available to probation", and a condition of probation was thus violated. I find that this violation was proved, in that Margolies did not provide copies of W-2's, or pay stubs, or his divorce decree or, apparently, any other document which showed any assets, despite requests for such documentation by probation officers. It was stated specifically in the sentencing hearing that all information as to assets and income were to be provided to probation so that probation could impose a reasonable payment plan.
The state further claimed that Margolies transferred assets in excess of $100 without the permission of a Superior Court judge. The evidence in support of this allegation was testimony that Margolies paid rent, and so forth, without obtaining court approval. Having reviewed the entire available record presented by the evidence, I do not think that ordinary checks made for the expenses of living are the sorts of asset transfers contemplated by the original sentence. I do not, then, find this allegation proved.
The state further claims that Margolies failed to make good faith efforts to find employment within thirty days from release and, in the following count, that he failed to cooperate with the Office of Adult Probation in assessing income and expenses within thirty days of CT Page 9241 obtaining full-time employment in order to create a payment plan. The defendant, buttressed in part by the opinion testimony of the career counselor, makes much of the idea that the plan which he pursued was not an unreasonable one and it may have maximized income later on. I agree to the extent, here hypothetical, that the plan he pursued may well have been most reasonable had there not been a paramount goal of quick reimbursement of victims. There is nothing to suggest that it would have been impossible for Mr. Margolies to have worked at one or more jobs while also pursuing his education; many people go to law school while working full time, for example. He perhaps may have had to postpone somewhat some of his educational opportunities in order to satisfy his primary obligation, that of repaying former clients from whom money was stolen. Employment in the context of this case does not mean employment designed only to further Margolies' career; it also means employment suitable in all the circumstances, which includes payment to the victims. In any event, I find that the condition relating to finding employment, which in the context means remunerative employment,[2] to have been violated.
I find that the language in the following count, referring to the language "once full-time employed within 30 days probation to assess income . . ." has been covered in other counts, and this language technically does not on its face refer to an obligation of the probationer. I do not find a violation, then, of this count.
The penultimate count alleges, in general, failure to adhere to payment plans. I find this count, in context, redundant with other counts and do not, accordingly, find an additional violation of this count.
Finally, the state alleges that Margolies failed to report on various dates. Based on the testimony of Beaupre, I find this allegation proved.
Parenthetically, the probationer argued that considerations of equal protection and due process militate against a finding that conditions of probation were violated and cites authority such as Bearden v. Georgia,461 U.S. 660 (1983). In Bearden, a probationer was obligated to make restitution. He apparently was illiterate and, though he was employed for some of the period of probation, he lost his job and apparently had little or no income at the time of his arrest for violation of probation. He had informed his probation officer of the details of his problems. The trial judge revoked probation and imposed the suspended prison sentence, and suggested that he had no choice because a condition of probation had clearly been violated. The Supreme Court reversed and remanded for consideration of whether the probationer was able to pay. The court held that if the probationer made all reasonable efforts to make payments but was unable to do so through no fault of his own, it CT Page 9242 would be fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishment were available. A lack of fault, then, excuses a violation. Id., at 668-69. But if there is a willful refusal to pay, which includes the failure to make a bona fide effort to find employment, the probationer can be found not to have had a sufficient concern for the debt owed to society for the crime. Id., 668. The bottom line is that the court is to inquire into the reasons for nonpayment, and if the nonpayment was not willful, then alternative measures are to be considered. Many of the considerations inBearden, then, apply to the disposition phase, in that a person is not to be imprisoned for mere inability to pay money if any other reasonable alternatives are available. To the extent that Bearden may apply to the violation phase of the proceedings, I find it inapposite because, interalia, I find that Mr. Margolies did not make the requisite good faith effort to find remunerative employment.
State v. Surprise, 1999 Ct. Sup. 14599 (Foley, J., 1999), also cited by the probationer, is similarly unavailing. There, a probationer apparently failed to make restitution. The court noted that there had not been a payment schedule imposed, and the office of probation apparently never determined the ability to pay. Nonetheless, the probationer was found to be in violation of probation because no reasonable restitution was paid. The court believed that a disposition of imprisonment was inappropriate in the circumstances, and instead imposed more stringent conditions of probation. At a minimum, then, the legal considerations suggested by the probationer do not prevent a finding of a violation of conditions of probation.
I find, then, that the probationer has violated conditions of probation. A hearing on the disposition has been scheduled. Because the relevant evidence has been presented, neither side has requested an evidentiary hearing and argument will be heard on August 9, 2000.
Beach, J.