**Affirmed and Memorandum Opinion filed August 27, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00512-CR

---

### RONALD DEAN GOODWIN, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Cause No. 08CR1047**

---

## M E M O R A N D U M   O P I N I O N

Appellant Ronald Dean Goodwin, Jr. pleaded guilty to indecency with a child by contact, *see* Tex. Penal Code Ann. § 21.11(a)(1), and was placed on deferred adjudication with community supervision. The State filed a motion to adjudicate guilt and revoke community supervision, and after a hearing, the trial court found that appellant had violated the terms of his probation. The court adjudicated appellant guilty and sentenced him to ten years' confinement. In two

issues, appellant contends the trial court erred by adjudicating him guilty. We affirm.

## BACKGROUND

On May 8, 2009, appellant pleaded guilty to indecency with a child by contact and received deferred adjudication with community supervision for ten years. The State filed a motion to adjudicate guilt and revoke community supervision in September 2011 and an amended motion in February 2012, alleging that appellant violated the following conditions of his probation:

4.   Report in person to the Supervision Officer, at least once each month as directed by the Supervision Officer and obey all rules and regulations of the [Galveston County Community Supervision and Corrections Department (G.C.C.S.C.D.)];

12.  Pay to the G.C.C.S.C.D. $60.00 per month as a Community Supervision Fee;

13.  Pay to the G.C.C.S.C.D. $531.00 in Court Costs . . . paid by installments of $10 per month paid each month;

16.  Pay to the G.C.C.S.C.D. $715.00 to reimburse the County for attorney fees for Court appointed attorney . . . paid by in [sic] installments of $10.00 per month paid each month;

17A. Pay to the G.C.C.S.C.D. $5.00 per month as a fee to the Sexual Assault Program Fund . . . ;

17B. Pay to the G.C.C.S.C.D. $50 as a payment to the Advocacy Center for Children of Galveston County, Texas . . . . ;

19.  Pay to the G.C.C.S.C.D. $25.00 as a Crime Victim's Compensation Fund reimbursement payment. . . . ;

23.  Pay to the G.C.C.S.C.D. $100.00 as payment to the Resource & Crisis Center of Galveston County, Texas . . . ;

36.  Attend psychological counseling sessions for sex offenders with an individual or organization which provides sex offender treatment as specified by our [sic] approved by the judge and the Community Supervision Department. Defendant shall participate in the group and individual counseling sessions as

2

directed by the attending therapist. . . . Defendant shall obey all rules, regulations and policies of the designed program, attend all sessions and complete all homework assignments until **successfully** terminated by the attending therapist and community supervision officer.

38. Within thirty (30) days make an appointment for a substance abuse assessment evaluation and furnish proof to the Supervision Officer of such appointment and then a written report with the findings and recommended therapy shall also be furnished to the Supervision Officer. The defendant will maintain treatment suggested until finally released and proof of release once again furnished to his Supervision Officer in writing.

Regarding condition No. 4, the State alleged that appellant failed to report for the month of September 2011. For conditions Nos. 12, 13, 16, 17A, 17B, 19, and 23, the State alleged that appellant was in arrears in varying amounts totaling $2,685.00. For condition No. 36, the State alleged that appellant was unsatisfactorily discharged from sex offender counseling, and for condition No. 38, that appellant was unsuccessfully discharged from outpatient substance abuse treatment. Appellant pleaded not true to all of the allegations.

The State called three witnesses at the revocation hearing: Judy Brown, appellant's community supervision officer in Galveston County; Dr. Collier Cole, appellant's therapist in Galveston County; and Jean Stanley, appellant's sex offender counselor in Angelina County.

Brown testified that she had been supervising appellant since May 2009, and appellant was in arrears on each of the fee conditions identified above. She testified that she had seventeen to eighteen contacts with appellant before he moved (and his supervision transferred) to Angelina County in September 2010. She explained that appellant had a "very negative" attitude since the beginning of probation and that he was in denial about some things.

3

Cole testified that he began therapy with appellant in September 2009 and that appellant attended group and individual therapy sessions once per month until August 2010. Cole met with appellant about twenty-four times for individual and group therapy sessions. Cole testified generally about the goals of sex offender therapy: to accept responsibility, develop some notion of empathy for the damage done to others, and establish some steps to prevent reoccurrence. He discussed the importance of accepting responsibility, describing it as "the number one key to treatment." Cole explained that a sex offender's acceptance of responsibility helps the victim heal.

However, Cole testified that appellant never accepted responsibility. There was "a lot of negativity" and complaining from appellant, and he was "always blaming others for his problems." Cole explained that it was destructive to the group therapy atmosphere when someone is "moaning and groaning and complaining because sometimes that gets others stirred up." Cole had to tell appellant a number of times to "keep it down" and "try to accept things." Cole recalled from his notes about appellant that he thought appellant's negative attitude did not "bode well for successful completion of treatment or probation." Further, it concerned Cole that appellant was "never engaged in treatment . . . because when you have someone who is an unrepentant child molester on the street, that's a big worry." Cole explained that appellant used "anger and belligerence to deflect others, to push things onto other people, get the attention off him," and he "never follows through." Cole believed appellant displayed a clear sign of a personality disorder.

Cole also testified that a polygraph is a "clinical tool which is used in all sex offender treatment programs throughout the country." It is a "very useful tool" for individuals like appellant who minimize and do not fully accept responsibility

4

because they "typically will come clean" when they fail a polygraph. Cole had been using polygraphs for twenty years in treatment and had seen it work "wondrously" because it helps people "come out of denial." At "virtually every session . . . from the get-go," Cole talked with appellant about taking a polygraph, but appellant never took one in Cole's program.

Stanley testified about appellant's therapy in Angelina County when he transferred in August 2010. She described appellant as "very polite but very resistant to the idea of treatment." He was very adamant that he was not a sex offender, and he did not see himself as a sex offender. He did not feel the need for treatment, and he "really went down the list of all the reasons why treatment would not be logistically, financially, or even clinically appropriate for him." Appellant "flatly den[ied] that he was responsible for anything," and it appeared to Stanley that appellant "saw himself as the victim of the system . . . , [and] he just really felt railroaded and ramrodded." Stanley testified that "this was [her] biggest concern perhaps from a clinical standpoint." According to Stanley, appellant said, "I'll do the curriculum. I'll do the assignments. But I didn't do this." Appellant "understood the concepts" of therapy, but "he would never own them himself."

In February 2011, Stanley did a "sexual interest and treatment needs evaluation," which showed indicators that appellant had a sexual interest in children. At some point during treatment, Stanley suggested appellant take a polygraph examination, and if he passed, he would not be required to come to treatment. Appellant took and failed the polygraph examination. Appellant made excuses for failing the polygraph and continued to deny responsibility. He returned to treatment, but he began missing "a lot" of appointments for group therapy.

Although Stanley testified that there was no set timeline for completing treatment, appellant was ultimately discharged from treatment. Stanley explained that it was a "joint decision" to discharge appellant based on conversations between her, Brown, and appellant's community supervision officer in Angelina County. Stanley believed that appellant was not a good candidate for continued treatment because of the indicators from the sexual-interest evaluation, his level of denial, and the fact that he "has made absolutely no progress in treatment."

Finally, appellant's wife testified that appellant missed appointments because he was the only driver in the family, and he had to take their children to an emergency care center due to the children's medical conditions.

The trial court found the allegations concerning conditions 4 and 38 "not true" and the remaining allegations "true." The court explained its decision to revoke probation:

> It's apparent to me, Mr. Goodwin, based on the testimony that I've heard is that counseling or treatment is not going to work with you and you're not accepting what the treatment offers—counselors are offering to you for treatment. When the Court places someone on probation, I expect them to abide by all the conditions of probation. And an offense like this, counseling is an extremely important condition of probation. And that's one of the main reasons why any court would place anybody on probation for an offense of this nature.
>
> Given that your refusal to accept the counseling and the benefits of counseling again, as I mentioned earlier, I do adjudicate your guilt, revoke your Community Supervision and hereby sentence you to ten years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant filed a timely notice of appeal.

ANALYSIS

In two issues, appellant contends the trial court abused its discretion by revoking appellant's community supervision because (1) there is no evidence that appellant willfully refused to make court-ordered payments; and (2) appellant had insufficient time to understand the results of his polygraph exam before being discharged from sex offender counseling.

The State must prove a ground for revocation of probation—including deferred adjudication—by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). We review a trial court's decision to revoke probation for an abuse of discretion, taking into account the sufficiency of the evidence supporting the basis for revocation. *See id.* at 865–66. The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 865.

Revocation of probation "implicates due process," and probation may not be "arbitrarily withdrawn." *Leonard v. State*, 385 S.W.3d 570, 576–77 (Tex. Crim. App. 2012) (quotation omitted). Accordingly, probation may not be revoked for an impermissible or unconstitutional reason.[1] "It would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that

---

[1] *See Leonard*, 385 S.W.3d at 573, 583 (holding that the trial court abused its discretion by revoking probation because a therapist discharged the probationer from sex offender treatment based entirely on the probationer's failing polygraph examinations); *see also Dansby v. State*, 398 S.W.3d 233, 239–40 (Tex. Crim. App. 2013) (revocation for invoking Fifth Amendment privilege is unconstitutional; court of appeals erred to conclude that the probationer's discharge from sex offender treatment program was not a product of his invocation of a Fifth Amendment privilege); *Gipson v. State*, 383 S.W.3d 152, 157 (Tex. Crim. App. 2012) (revocation for failure to pay fines without considering the reasons for the probationer's inability to pay or alternative orders would violate the United States Constitution (citing *Bearden v. Georgia*, 461 U.S. 660, 665 (1983))).

discharge were used as a basis to revoke the defendant's community supervision." *Id.* at 577.

When a trial court, through a condition of probation, makes the probationer's compliance with the condition subject to the discretion of a third party, we must "examine the third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision." *Id.* (reviewing revocation of probation because of the probationer's discharge from sex offender treatment). In *Leonard*, the Court of Criminal Appeals suggested that the "purposes of community supervision" may be found in the statutory authority of a trial court to impose reasonable conditions "'designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.'" *Id.* at 577 & n.13 (quoting Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a)).

With this standard in mind, we will address appellant's second issue on appeal.[2] Initially, we note that appellant cites to no record evidence indicating the length of time between appellant's polygraph examination and his discharge from the sex offender treatment program. Nor does the record contain any evidence about what would constitute "sufficient time" for a probationer to understand the results of a polygraph examination so that the probationer may begin to accept responsibility for his conduct. Regardless, there is significant evidence that appellant steadfastly refused to accept responsibility for his conduct over a period of almost two years while attending therapy on a bi-weekly and then weekly basis, and that this was the primary reason he was discharged from therapy and the primary reason the trial court revoked probation.

---

[2] If there is sufficient evidence that the defendant violated one of several grounds for revocation, we need only address that ground on appeal. *See, e.g.*, *Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. 1978).

Cole described a sex offender's accepting responsibility as "the number one key to treatment," and Stanley testified that appellant's denial of responsibility was her "biggest concern." Cole testified that acceptance of responsibility helps the victim heal. Accordingly, there is some evidence that requiring appellant to accept responsibility for his conduct was rationally connected to a purpose of community supervision—restoring the victim. *See id.* Further, according to Stanley, appellant made "absolutely no progress in treatment" after nearly two years of therapy. Appellant's making progress in treatment would be rationally connected to the purposes of rehabilitating and reforming appellant. *See id.* The trial court concluded "counseling or treatment is not going to work" for appellant. With some evidence supporting this conclusion, the trial court did not abuse its discretion by revoking probation for appellant's discharge from sex offender treatment.

Appellant's issues are overruled, and we affirm the trial court's judgment.

/s/     Sharon McCally
        Justice

Panel consists of Justices Brown, Christopher, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).