**UNITED STATES of America, Appellee**

**v.**

**Anthony Tyrone HOLMAN, also known as Nino, Appellant**

**No. 16-3107**
**September Term, 2016**

United States Court of Appeals, District of Columbia Circuit.

Filed On: January 13, 2017

Priya Naik, Assistant U.S. Attorney, U.S. Attorney's Office (USA), Civil Division, Elizabeth Trosman, Esquire, Assistant U.S. Attorney, U.S. Attorney's Office (USA), USAO Appellate Counsel, Appel-

late Division, Washington, DC, for Plaintiff–Appellee.

Danielle Jahn, Assistant Federal Public Defender, A.J. Kramer, Federal Public Defender, Office of the Federal Public Defender (FPD), Washington, DC, for Defendant–Appellant.

Before: Brown and Pillard, Circuit Judges, and Edwards, Senior Circuit Judge.

## JUDGMENT

Per Curiam

The court considered this appeal on the record from the United States District Court for the District of Columbia, and the briefs and arguments of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **VACATED.**

Defendant-Appellant Anthony Holman appeals the district court's order, entered after his term of supervised release had expired, that revoked his supervised release and reincarcerated him. The district court relied on 18 U.S.C. § 3583(i). That provision extends the court's jurisdiction to revoke a term of supervised release "beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i). The district court pointed to a summons issued on October 15, 2014, as satisfying section 3583(i)'s requirement. But the alleged 2014 violation of supervised release that was the subject of that summons was resolved well

before the charged violations that gave rise to the 2016 revocation, and no further summons was issued before the expiration of Holman's term of supervised release to call Holman to answer for those new charges. We accordingly hold that the district court had no jurisdiction to revoke supervised release.

Anthony Holman pled guilty to a charge of bank theft on August 25, 2010. The district judge sentenced Holman to three years in prison followed by three years of supervised release and ordered him to pay restitution of $210,000 at a rate of at least $50 per month. The supervised release term began June 28, 2013, and expired June 27, 2016.

On May 22, 2014, the probation office filed a petition alleging that Holman violated the terms of his supervised release because he was arrested in Maryland on March 24, 2014, for possession of marijuana with intent to distribute (Violation 1). The district court entered a minute order six days later stating "PROBATION MINUTE ORDER Issuance of a summons and schedule a hearing," but it set no hearing date. J.A. at 148. On September 19, 2014, the probation office filed an addendum to its earlier petition alleging that Holman violated the terms of his supervised release by failing to pay restitution during April, May, June, and August of 2014 (Violation 2). On October 15, 2014, the district court entered another minute order: "PROBATION MINUTE ORDER Issuance of a summons and schedule a hearing." J.A. at 148. The court then scheduled a hearing for October 24, 2014.

On October 24, the judge heard from the probation office, the AUSA and Holman's counsel, and the judge's response comported with and went further than the government's requested sanctions. The probation office reported that the state marijuana charge had been dropped and recom-

mended a "verbal reprimand" for that alleged supervised release violation. J.A. at 20. For the alleged refusal-to-pay violation, the probation office recommended giving Holman "an opportunity to pay" and suggested coming back in sixty days or so to follow up. *Id.* The United States Attorney's office concurred with that recommendation, as did Holman's counsel, who explained that Mr. Holman was "technically employed but [wa]s not receiving any income because [his employer hadn't] called him" for shifts. J.A. at 21.

The court verbally reprimanded Holman. The judge challenged Holman to explain "What were you doing with marijuana on you?" and told him "Stay away from drugs. You're lucky. Consider yourself lucky that you're not stepping back [into prison] right now. Consider yourself lucky." J.A. at 23, 25. The court also agreed to give Holman a chance to prove that he was "looking for work and paying off [his] debt." J.A. at 24. As a "sanction for [Holman's] conduct," the district court put him under house arrest for two months. *Id.* During that period, Holman could leave home only between 7:00 a.m. and 9:00 p.m. "to either work, look for work or seek counseling," or for needed medical care with prior notice. J.A. at 24-25. He also had to undergo weekly drug testing. J.A. at 25.

The court told Holman that it was going to give him a chance to "salvage this situation." *Id.* If Holman "compl[ied]" with the district court's conditions, the court would "take [him] off" house arrest. *Id.* But if Holman committed further violations, he would "be spending Christmas in prison." *Id.* The court specifically instructed the probation office to notify the court "immediately" of "any violations." J.A. at 26.

Holman complied, and did not spend Christmas in prison. The probation office identified no violations during the two months of house arrest. On December 16, 2014, the probation office reported to the court that Holman had been "[compliant] with his location monitoring condition," that "all urine test results have been negative," and that he "started employment last week." J.A. at 29. On December 22, the court entered a minute order cancelling that day's hearing. The docket sheet noted the hearing would be "rescheduled for a date and time to be determined." J.A. at 149. That hearing was not rescheduled, and the docket reflects no activity for the following sixteen months.

On March 31, 2016, the probation office filed a petition alleging that Holman committed two new violations of his supervised release: First, he was arrested in December 2015 for sale and distribution of marijuana in Virginia (Violation 3). Second, he failed to pay restitution since November 2014 (Violation 4). On April 14, 2016, the court entered a minute order—the first docket entry since December 22, 2014— "[c]oncurring with the recommendation of the probation office that the additional allege[d] violations" be included in "any forthcoming hearing on violation (1)." J.A. at 149. There was no forthcoming hearing on Violation 1, however, because it had already been resolved.

The probation office did not request a summons, nor did the court issue one in connection with the new alleged violations. After Holman's supervised release expired on June 27, 2016, the court scheduled and held a hearing on the new revocation petition. The court on September 26, 2016, revoked Holman's supervised release and sentenced him to four months' incarceration and twenty months' supervised release.

\* \* \*

The government concedes that the summons issued for Violation 1 on May 28,

2014, was resolved in 2014, but argues that the district court retained jurisdiction under 18 U.S.C. § 3583(i) based on the October 15, 2014, summons for Violation 2. We conclude that there was no summons remaining in effect when the probation office charged new violations in March 2016. There is no support for the government's contention that Holman's failure to pay restitution during several months in 2015 and 2016 kept open the 2014 failure-to-pay charge and the corresponding 2014 summons. The record shows that the 2014 summonses both were resolved by the end of 2014.

As described above, the district court summoned Holman to appear on October 24, 2014, to address alleged Violations 1 and 2. The court stated to Holman that compliance with the October 24, 2014, order imposing house arrest and enlarged conditions of supervision would resolve the then-pending violation petitions so that his supervised release would not be revoked. Holman complied. Neither the government nor the court identified any shortfall in Holman's fulfillment of the demands the court imposed. The probation office in December 2014 reported full satisfaction. Those reports, together with the court's cancellation of the December 22 hearing and its decision not to return Holman to prison, show that the petitions alleging Violations 1 and 2 were resolved. Although the minute order said that the December 22 conference would be "rescheduled," there is no hint in the record that the court actually anticipated further proceedings relating to charged Violations 1 or 2.

The government overlooks the important distinction between ongoing lags in payment of restitution and ongoing violations of conditions of supervised release. Holman may still have been in arrears on his restitution obligation after December 22, 2014. Resolution of the charge that his nonpayment violated the terms of his supervised release did not mean that he was compliant with his restitution obligation. But failure to pay is not in itself a violation of supervised release. A supervisee must have "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay" before a court may impose a term of incarceration for failure to pay restitution. *Bearden v. Georgia*, 461 U.S. 660, 671–72, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). There is no finding in the record—nor, indeed, any basis for any finding—that Holman at any time had an ability to pay yet willfully refused to do so. The record evidence suggests Holman was making bona fide efforts to comply with his restitution obligation. He had a job in October 2014 that he contended did not pay enough to support restitution payments, and there is no evidence to the contrary. He reported that he found another job by December 2014. Holman's payment history supports his contentions that he paid when he was able to do so. Holman paid $200 in July 2014, four times the monthly minimum requirement. As of March 31, 2016, Holman apparently had paid a total of $1,110—approximately twenty-two months' worth of $50 payments. The record does not tabulate when or how Holman made his payments, but his efforts and his progress further undermine any contention that his failures to pay were willful. During the hearing on September 16, 2016, Holman reiterated his consistent position that his failures to pay were "[d]ue to being unemployed." J.A. at 119. In months for which the probation office reported, and Holman admitted, that he did not make the minimum required payments, no evidence substantiates the necessary additional elements of ability to pay but willful failure to do so. There is neither evidence nor any finding to support the government's contention that Holman's failure to pay resti-

tution constituted an "ongoing violation" of the terms of his supervised release.

For the foregoing reasons, we conclude that no summons was outstanding at the expiration of Holman's term of supervised release so the district court lacked jurisdiction under 18 U.S.C. § 3583(i) to revoke supervised release. The judgment is therefore vacated.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. In light of Defendant-Appellant's approaching release date, the Clerk is directed to issue the mandate forthwith.

Brown, Circuit Judge, concurring in the judgment:

Though I agree Anthony Holman's sentence should be vacated, I reach that decision on far narrower grounds than those contained in the majority's analysis.

The majority's resolution hinges on its conclusion that Holman's first restitution violation—violation 2—was fully resolved at the October 24, 2014 hearing. But the majority misrepresents the record when it pronounces, "There is no support for the government's contention that Holman's failure to pay restitution during several months in 2015 and 2016 kept open the 2014 failure-to-pay charge and the corresponding 2014 summons." Judgment at 3. In fact, conflicting evidence exists on this point that undermines the foundation for the majority's conclusion.

For one thing, the December 22, 2014 minute order itself explicitly states the court planned to reschedule the status hearing, not cancel it. Nor did the court take any affirmative action to dismiss the revocation proceedings. *See* FED. R. CRIM. P. 32.1(b)(1)(C) ("If the judge finds probable cause, the judge must conduct a revocation hearing. If the judge does not find probable cause, the judge must dismiss the proceeding."). Additionally, both Holman's counsel and the district court judge made statements at the October 24, 2014 hearing supporting the view that resolving the restitution violation required Holman not only to acquire gainful employment, but also to affirmatively make restitution payments. *See* J.A. 21 (statement from Holman's counsel noting "we would request . . . that two months be extended to [Holman] so that he can demonstrate to the Court that he can try to *get up, back out of arrears*" (emphasis added)); *see also* J.A. 24 ("THE COURT: So what I'm going to do is give you a chance to prove that you're looking for work *and paying off your debt.*" (emphasis added)). Since Holman only acquired a second job one week before the rescheduled hearing, he could not make this showing within the sixty-day timeframe set by the court. And, since no status hearing was ever held, the record *does* support the view that the district court never resolved this component of the restitution violation.[1]

In light of this conflicting evidence, I find the majority's analysis largely conclusory and an inapt means of resolving this case. More than that, it is also wholly unnecessary. Federal Rule of Criminal

---

1. The Probation Office's March 31, 2016 report also supports the view that it did not interpret the intervening sixteen months' silence as indicating full resolution of the issues presented at the October 24 hearing. The report recommended "the additional alleged violations be included at any forthcoming hearing on violation." J.A. 33. Though the report did not specify which violation was being referenced, it did not recommend issuing a summons, *compare* J.A. 11 (recommending issuing a summons for violation 1), *with* J.A. 15 (recommending including violation 2 "at the forthcoming hearing"). It seems to contemplate that the Probation Office did not infer from the court's inaction that the matter had been closed.

Procedure 32.1(b)(2) states a judge "must hold [a] revocation hearing within a reasonable time." Here, whether through oversight or otherwise, the district court waited sixteen months before taking its next action relating to Holman's revocation when it adopted the Probation Office's recommendations on April 14, 2016. It then delayed another approximately three months before scheduling the hearing itself. *See* J.A. 149 (scheduling the hearing for July 21, 2016 via a minute order dated July 13, 2016).

I am conscious of the overloaded dockets faced by the district courts and the concomitantly formidable task of juggling numerous and complex timelines. However, it seems that, in this case, Holman simply slipped through the cracks, which resulted in an unreasonable delay occurring between the October 24, 2014 hearing and the court's next follow-up action. This delay results in a windfall for Holman, who does not dispute his December 2015 drug arrest violated the terms of his supervised release and justified mandatory revocation. Here, the delay apparently provided the statutory "hook" granting the court extended jurisdiction under 18 U.S.C. § 3583(i) and, in turn, that extended jurisdiction allowed the court to revoke his supervised release.

The Probation Office's March 31, 2016 violation report recommended the court include violations 3 and 4 at "any forthcoming hearing," J.A. 33, rather than issue a summons. *Compare* J.A. 11, *with* J.A. 33.

This strongly suggests the office viewed violation 4 as cumulative of Holman's earlier default. That may be accurate, but, when more than a year has elapsed without a hearing, the better practice is to issue a new summons. Accordingly, I would find the court abused its discretion by allowing sixteen to nineteen months to elapse before resolving Holman's violations, and I would vacate on this ground alone. *See United States v. Pagán–Rodríguez*, 600 F.3d 39, 42 (1st Cir. 2010); *see also United States v. Throneburg*, 87 F.3d 851, 853–54 (6th Cir. 1996).

Edwards, Senior Circuit Judge, concurring:

The record in this case can be read either to find (1) that the summons had been resolved, in which case the District Court lacked jurisdiction to revoke Holman's supervised release, or (2) that any outstanding summons was not resolved in a reasonable time because the District Court abused its discretion in allowing sixteen or more months to elapse before resolving Holman's violations. In either case, the sentence must be vacated. I therefore concur.