## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2017, 7:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tommy J. Sexton,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | July 25, 2017<br><br>Court of Appeals Case No.<br>43A05-1703-CR-630<br><br>Appeal from the Kosciusko<br>Superior Court<br><br>The Honorable Joe V. Sutton,<br>Judge<br><br>Trial Court Cause No.<br>43D03-1210-FB-616 |

**Brown, Judge.**

[1] Tommy J. Sexton appeals the trial court's order revoking his probation and ordering that he serve a portion of his previously suspended sentence. Sexton raises one issue which we revise and restate as whether the trial court abused its discretion in sentencing him following revocation of his probation. We affirm.

*Facts and Procedural History*

[2] On October 5, 2012, the State charged Sexton with failure to remain at the scene of an accident causing serious bodily injury as a class B felony and causing serious bodily injury while operating a motor vehicle as a class D felony. On October 3, 2013, Sexton entered a plea agreement in which he pled guilty to failing to remain at the scene of an accident causing serious bodily injury as a class B felony. The plea agreement provided for a "cap on the initial executed portion of the sentence of seven (7) years executed in the Indiana Department of Corrections/KCJ, and the balance of any sentence suspended by the Court to be served on formal probation with the Kosciusko County Probation Department." Appellant's Appendix Volume 2 at 57-58.

[3] On October 31, 2013, the court found Sexton's guilty plea and his remorse as mitigators, and his criminal history, failure on probation in the past, and high risk to re-offend as aggravators. The court sentenced Sexton to twelve years with five years suspended and seven years of incarceration. It also ordered that Sexton's operator's license and driving privileges be suspended for a period of five years with the suspension to begin after his release from incarceration.

[4]     After serving his term of incarceration, Sexton reported to probation on August 7, 2015, was provided a set of rules of probation, received an explanation of the rules, and acknowledged that he understood them. He signed an Order of Court Specifying Conditions of Probation indicating that he had been placed on probation for five years from July 29, 2015, to July 29, 2020. The order stated: "You shall make and keep an appointment for an evaluation; comply with recommended treatment and pay therefor with KCADP, and sign a release of information form." *Id.* at 72. The order also stated that his driver's license was suspended for five years beginning after his incarceration.

[5]     On July 1, 2016, the State filed a verified petition of probation violation alleging that "KCADP has closed the file unsuccessful." *Id.* at 73. The petition attached a letter from the program director of the KCADP which stated in part:

> This letter is to inform you that the above Tommy Sexton KCADP file has been close [sic] down . . . . Tommy has failed to complete his KCADP appointments/assessments on multiple occasions. See time line below:
>
> 1.  INTAKE: was schedule for 11/24/16, he was a no show, no call
> 2.  INTAKE: was scheduled for 12/15/15, he was a no show, no call
> 3.  ASSESSMENT was scheduled for 3/3/16, KCADP rescheduled do [sic] to a conflict in schedule
> 4.  ASSESSMENT: was scheduled for 3/11/16, he was a no show, no call
> 5.  ASSESSMENT: was scheduled for 4/12/16, he showed, but did not have his fee.
> 6.  ASSESSMENT: was scheduled for 5/11/16, he showed, but again did not have his fee. His program fee had been reduced down to $100.00.

> As you can see KCADP has worked with Tommy and he continues to make the choice not to comply.

*Id.* at 78.

[6] On February 16, 2017, the court held a hearing, and Sexton admitted the probation violation. When asked if there was a reason he did not complete the KCADP program, he answered:

> Well it started out I didn't have the money to pay the drug assessment fee. I didn't have a job. Well, I got a, he filed that violation before I got the job. I got a job. I paid the assessment fee, but I mean transportation has been a big problem for me, man. I mean, I won't drive. I mean, that's the deal. I mean, I have a hard time getting around. I got a good job now. But I mean, I'm trying. I mean I went up for the assessment at the Bowen Center, but I got to get these classes in, that's all I got to do.

Transcript Volume 2 at 12-13. He testified that when he paid the drug assessment fee, he received a referral to the Bowen Center and then "they never received any referral so I held up on that and then they finally called me back and said they got the referral and I went up there like three (3) weeks ago and took the first assessment up there." *Id.* at 13. When asked when he found a job following his release, he answered:

> It took me awhile to find a job because of transportation. I went and worked for a guy that traveled around, you know, but he finally didn't have enough work to keep his other guys busy and I needed more work. And I finally got the job at Tri-Lakes Containers like five (5) months ago, I think, six (6). Where I can

have transportation, I got a cousin that works there and he picks
me up for work and drops me back home.

*Id.* at 14. The court stated that Sexton was a "no-show" and "[n]o call" and
stated, "It doesn't take money to show up or call." *Id.* at 14-15. Sexton replied,
"No, Your Honor." *Id.* at 15. The following exchange then occurred between
the court and Sexton:

Q: The assessment was scheduled for 3/3/16. KCADP
rescheduled because they had a conflict. The assessment
rescheduled for 3/11/16. No show, no call. The next line is
assessment was scheduled for 4/12/16, he showed but did not
have a fee.

A: Yeah, that was when I was having trouble with money.

Q: Rescheduled for 5/11/16. He showed, again, no fee. His
program fee was reduced to $100.00.

A: Oh yeah, he did do that.

Q: Have you paid any money yet?

A: Yes, sir. I paid that and that's when he started going on with
the process.

Q: Are you out at Bowen Center now doing classes?

A: I went like three (3) weeks ago for their first assessment.
That's the first time I can get in there. And I got to start twenty
(20) week of classes here.

Q: Was the schedule three (3) weeks ago determined by Bowen Center or was that just?

A: No, that, I mean, I having, I'm trying line [sic] up transportation, Your Honor. I mean it's a problem for me to get transportation, man. I don't know, I mean. I got a good ride to work, but, I mean, it's a struggle. I had a good ride for a while, but he's been sick.

Q: Okay. Walk me through this. May 11 of 16 you showed, did not have a fee, reduced the fee to $100.00. When did you pay the $100.00?

A: I can't remember the date, I mean?

Q: And you're having trouble getting out to Bowen Center because of transportation?

A: Yes, Your Honor. I mean, because they got to take me up there, and, I went up there for the assessment, but I mean, it's just hard to, it's hard for me to make it to the grocery store, man. I don't have very much family up here. I'm from Kentucky. And it's been pretty rough to get around. I mean, I could drive but I won't drive, I mean.

Q: Okay, but you agreed, would you agree with me that you signed a plea agreement that required you to do drug and alcohol counseling?

A: Yes, Your Honor.

Q: And that you had a lot of suspended time in here on doing certain things set out in your plea agreement. And you

understand that you're bound by that agreement as would be your attorney, as would be the prosecutor and the court as well?

A: Yes, yes, Your Honor.

*Id.* at 15-16. The court found a sufficient factual basis to accept Sexton's admission and found him in violation of probation.

[7] On February 28, 2017, the court held a sentencing hearing on the probation violation. Without objection, the court admitted a monthly progress report for January 2017 from the Bowen Center which stated that Sexton had not attended Substance Use group or individual treatment that month, that he "[n]o-showed to all group sessions and no-showed to individual session on 1/27/17," and that it was recommended that he "complete MRT group treatment in Warsaw and complete all recommendations of assessment." State's Exhibit 1. The report also listed "Treatment Progress" as "Unsatisfactory" and "Motivation" as "Clinician has not met client to determine." *Id.*

[8] Sexton stated that he "had a ride" who is old and had been in the hospital for pneumonia twice that year, but was "just now getting healthy." Transcript Volume 2 at 23. He stated that he had "a good ride to work. He lives over by me, he's my nephew. He works there." *Id.* at 24. Upon questioning by the court, Sexton indicated that he worked in Pierceton, Indiana, and that he lived in Silver Lake, Indiana. When asked by the court if he could not obtain a ride to go from Silver Lake to Warsaw for treatment, Sexton answered in part that

he did not know they had recommended him to go to Warsaw. The following exchange occurred:

> THE COURT: Mr. Sexton, if I was facing five (5) years on probation violation I think I'd ride a bike if I had to to Warsaw. I mean there's Bowen Centers in most towns. There is one in Syracuse. There is one in Wabash. There is one in Warsaw. There's one in Columbia City. I mean, did you ever investigate having your services done in Warsaw?
>
> [Sexton]: I didn't know they recommended me for Warsaw. I really didn't. I did call up there and told them I couldn't make it. I don't know if they had that on record or not. I didn't know they recommended for Warsaw.
>
> THE COURT: Well, I mean here is the bottom line. The rules of probation said that you are going to attend these classes if they recommend them. And then they file a violation and you still haven't attended class.
>
> [Sexton]: I mean, I've got to take twenty (20) of them. I mean, I can, I've got twenty (20) weeks of them. Anyway. If I can start now, I mean, I'll get them in. And I'm on probation for five (5) years. It's a long time.

*Id.* at 27.

[9]     Sexton indicated that he was working forty hours a week at least and that "if I have to I mean I thought about getting a taxi. Like I said, I've been behind. I'll get a taxi if I have too [sic]. Pete, my ride, said he would take me." *Id.* at 30. Sexton also stated:

I've been struggling with transportation, I really have, Your Honor. I mean, I can, I will do better at it. I mean, I don't know, I mean it's been, I know it's been a long time. I've been on probation. I should have had it done. I mean I admit that. I should be working on it more than what I should. I mean I will in the future.

*Id.* at 31.

[10] After further discussion, the court stated:

[Y]ou're blaming an old guy for not getting you to work and we're thinking about cabs, we're thinking about doing this and we're thinking about doing that. And time is a ticking. And it's easy for you because you don't have commit [sic], you don't have to perform. You don't have to do anything, but it comes home to roost when you don't. So, the Court makes a specific finding [Sexton] did have the ability to pay, scholarships were available for Bowen Center programs which the Probation Officer secured for him. Probation, Drug and Alcohol Director waived some of the fees to get things moving. Paying for cab rides was discussed in October. And we have no progress on attendance. . . . You'll just have to go back on the failure to perform. It's not a money issue. It's making arrangements and make a few sacrifices and paying a few dollars to get to the classes that were part of the deal.

*Id.* at 32-33. The court ordered Sexton to serve four and one-half years in the Department of Correction.

## Discussion

The issue is whether the trial court abused its discretion in sentencing Sexton following revocation of his probation. Ind. Code § 35-38-2-3(h) sets forth a trial court's sentencing options as follows:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> > (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> > (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> > (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

"Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Prewitt*, 878 N.E.2d at 188. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citation omitted).

Sexton contends the court abused its discretion in imposing a particularly severe sentence for a minor probation violation. He argues that initially his failure to attend was due to his unemployment and inability to pay, and that he paid the drug assessment fee once he found a job. He also asserts that his difficulty with transportation should be considered genuine given that the suspension of his driver's license was a term of his probation and underlying sentence.

The State argues that Sexton repeatedly failed to appear for his appointments and on several occasions did not even call to explain his absence. It points out that the probation violation Sexton admitted to stated that he failed to appear for appointments or call to his explain his absences and that he acknowledged that he was able to obtain a ride to work. The State also notes that Sexton failed to successfully complete probation in the past.

In *Runyon v. State*, the Indiana Supreme Court held that if the violation of a probation condition involves a financial obligation, then the probationer must be shown to have recklessly, knowingly, or intentionally failed to pay. 939 N.E.2d 613, 616 (Ind. 2010). *See also* Ind. Code § 35-38-2-3(g) ("Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay."). The Court determined "[a]s to the fact of violation, the statute expressly imposes the burden of proof upon the State. But with respect to the ability to pay, the burden of proof is not explicitly designated." 939 N.E.2d at 616. The Court held, "it is the State's burden to prove both the violation and the requisite state of mind in order to obtain a probation

revocation." *Id.* With respect to the ability to pay, the Court held that it is the defendant probationer's burden "to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." *Id.* at 617 (citing *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)). If the offender is able to make this showing, then the trial court "must consider alternative measures of punishment other than imprisonment." *Id.* at 616 (quoting *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S. Ct. 2064, 2073 (1983)).

[16] The record reveals that Sexton failed to show up or call for multiple appointments. While he testified that he experienced difficulties with transportation, he also testified that he had two individuals providing him transportation at various times, that he worked at least forty hours a week, and that he thought about using a taxi. He also testified: "I mean, I can, I will do better at it. . . . I should have had it done. I mean I admit that. I should be working on it more than what I should." Transcript Volume 2 at 31. We also note that the trial court stated: "It's not a money issue. It's making arrangements and make a few sacrifices and paying a few dollars to get to the classes that were part of the deal." *Id.* at 33. Under the circumstances, we cannot say that the trial court abused its discretion in ordering that Sexton serve four and one-half years in the Department of Correction.

## *Conclusion*

[17] For the foregoing reasons, we affirm the trial court's sentence following the revocation of Sexton's probation.

[18]   Affirmed.

Najam, J., and Kirsch, J., concur.