**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000056
31-OCT-2023
08:05 AM
Dkt. 59 SO**

NO. CAAP-22-0000056

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MELISSA FAY, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(LAHAINA DIVISION)
(CASE NO. 2DTA-21-00637)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Melissa Fay (**Fay**) appeals from the January 24, 2022 Amended Judgment and Notice of Entry of Amended Judgment (**Amended Judgment**), entered by the District Court of the Second Circuit (**District Court**).[1]

On July 26, 2021, the State of Hawai'i (**State**) filed a Complaint charging Fay with four offenses stemming from an incident on July 3, 2021:  (1) Storage of an Open Container, in

---

[1]     The Honorable Lauren M. Akitake presided.

violation of Hawaii Revised Statutes (**HRS**) § 291-3.3(a) (2020);[2]

(2) Operating a Vehicle under the Influence of an Intoxicant

(**OVUII**), in violation of HRS § 291E-61(a)(1) (2020)[3] and subject

---

[2]    HRS § 291-3.3(a) states:

> **§ 291-3.3  Storage of opened container containing intoxicating liquor or consumption at scenic lookout.**  (a) No person shall keep in a motor vehicle, or on a moped when such vehicle or moped is upon any public street, road, or highway or at any scenic lookout, any bottle, can, or other receptacle containing any intoxicating liquor which has been opened, or a seal broken, or the contents of which have been partially removed or fully removed, unless such container is kept in the trunk of the vehicle, or kept in some other area of the vehicle not normally occupied by the driver or passengers, if the vehicle is not equipped with a trunk.  A utility or glove compartment shall be deemed to be within the area occupied by the driver and passengers.

[3]    HRS § 291E-61(a)(1) states:

> **§ 291E-61  Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> > (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

2

to HRS § 291E-61(b)(1) (Supp. 2022);[4] (3) Inattention to Driving,

in violation of HRS § 291-12 (2020);[5] and (4) No Motor Vehicle

_____

[4]     HRS § 291E-61(b)(1) states:

§ **291E-61  Operating a vehicle under the influence of an intoxicant.**
(b)    A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced without possibility of probation or suspension of sentence as follows:
(1)    Except as provided in paragraph (4), for the first offense, or any offense not preceded within a ten-year period by a conviction for an offense under this section or section 291E-4(a):
(A)    A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable programs deemed appropriate by the court;
(B)    Revocation of license to operate a vehicle for no less than one year and no more than eighteen months;
(C)    Installation during the revocation period of an ignition interlock device on all vehicles operated by the person;
(D)    Any one or more of the following:
(i)    Seventy-two hours of community service work;
(ii)   No less than forty-eight hours and no more than five days of imprisonment; or
(iii) A fine of no less than $250 and no more than $1,000;
(E)    A surcharge of $25 to be deposited into the neurotrauma special fund; and
(F)    A surcharge, if the court so orders, or up to $25 to be deposited into the trauma system special fund[.]

[5]     HRS § 291-12 states:

§ **291-12  Inattention to driving.**  Whoever operates any vehicle negligently as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than thirty days, or both, and may be subject to a surcharge of up to $100, which shall be deposited into the trauma system special fund.

Insurance (**NMVI**), in violation of HRS § 431:10C-104(a)(2019),[6]

and subject to HRS § 431:10C-117(a)(2) and (3) (Supp. 2022).[7]

---

[6]     HRS § 431:10C-104(a) states:

> **§ 431:10C-104  Conditions of operation and registration of motor vehicles**.  (a) Except as provided in section 431:10C-105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

[7]     HRS § 431:10C-117 states, in pertinent part (format altered):

> **§ 431:10C-117  Penalties**.
> (a) . . . (2)  Notwithstanding any provision of the Hawaii Penal Code:
>> (A)   Each violation shall be deemed a separate offense and shall be subject to a fine of no less than $100 nor more than $5,000 which shall not be suspended except as provided in subparagraph (B); and
>> (B)   If the person is convicted of not having had a motor vehicle insurance policy in effect at the time the citation was issued, the fine shall be $500 for the first offense . . . provided that the court:
>>> (i)   Shall have the discretion to suspend all or any portion of the fine if the defendant provides proof of having a current motor vehicle insurance policy; provided further that upon the defendant's request, the court may grant community service in lieu of the fine, of no less than seventy-five hours and no more than one hundred hours for the first offense, and no less than two hundred hours nor more than two hundred seventy-five hours for the second offense; and
> (3)  In addition to the fine in paragraph (2), the court shall either:
>> (A)   Suspend the driver's license of the driver or of the registered owner for:

(continued...)

On August 23, 2021, Fay entered into a plea agreement with the State. Under the plea agreement, Count 1 was dismissed with prejudice; Fay pled no contest to Count 2, OVUII, and the State recommended $250 in fines plus the statutory penalties and fees as a first time OVUII offender; Count 3 was amended to Criminal Property Damage in the Fourth Degree under HRS § 708-823 (2014),[8] with a recommended fine of $100, a payment of restitution, and a signature of a freestanding order; and Fay pled no contest to Count 4, NMVI, and the State recommended a $500 fine plus the statutory penalties and fees.

On January 24, 2022, Fay signed and the District Court entered an Order Imposing a Free Standing Order of Restitution (**Restitution Order**), which required her to pay $6,504 at $50 per month. The District Court further ordered proof of compliance hearings (**Compliance Hearings**) be held to periodically monitor the restitution payments. Fay objected to the Compliance Hearings, arguing that once a freestanding order is signed, a district court no longer has jurisdiction over restitution. The

---

[7](...continued)
        (i)   Three months for the first conviction; and
        (ii)  One year for any subsequent offense within a
              five-year period from a previous offense[.]

[8]     HRS § 708-823 states:

        **§ 708-823  Criminal property damage in the fourth
        degree.**  (1) A person commits the offense of criminal
        property damage in the fourth degree if by means other than
        fire, the person intentionally or knowingly damages the
        property of another without the other's consent.
              (2) Criminal property damage in the fourth degree is a
        petty misdemeanor.

Court denied Fay's oral motion objecting to the order for Compliance Hearings and included its rulings in the Amended Judgment. On February 15, 2022, Fay filed a notice of appeal from the Amended Judgment.

Fay raises a single point of error on appeal, asserting that the District Court erred in denying Fay's motion to not set Compliance Hearings to monitor Fay's payments on the Restitution Order because: (1) the District Court lacks jurisdiction; and (2) the practice of setting unending Compliance Hearings to enforce restitution constitutes an abuse of discretion and a waste of judicial resources, needlessly duplicates the established civil judgment mechanism, and criminalizes individuals who lack the capacity to pay restitution.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Fay's point of error as follows:

(1) Fay contends since the enactment of Act 269, Session Laws of 1998, which created HRS § 706-646 (2014) and HRS § 706-647 (2014), a free standing order of restitution is civil in nature, and therefore, the criminal courts lack jurisdiction to enforce such an order. Fay submits that because the Legislature intended to allow victims to use civil collection remedies, criminal courts, including the District Court in this

case, lack jurisdiction.  We conclude that this argument is without merit.

Pursuant to HRS § 604-7(4) (2016),[9] a district court has the power to enforce judgments.  Pursuant to HRS § 706-605(7) (2014),[10] a court has jurisdiction to order a defendant to make restitution payments for losses as provided in § 706-646.  The Legislature explained its rationale for adding HRS §§ 706-646 and 706-647 as follows:

> The purpose of this bill is to allow victims of crime to enforce a criminal restitution order in the same manner as a civil judgment.  This section also includes within the definition of "victim" a governmental entity which has reimbursed the victim for losses arising as a result of the crime, and allows the court to order restitution to be paid to the criminal injuries compensation commission [(**CICC**)] if the victim has been given an award for compensation by the commission.
>
> Under current law, a defendant may be required by the court to pay restitution for losses caused to the victim.  Collection of this restitution is left to governmental entities such as the Judiciary, Public Safety, and Paroling Authority, which often are able to collect only a small fraction of the amount.
>
> There are few other options.  Although the CICC helps victims by providing some compensation, victims of property crimes and some violent crimes are not eligible for any

---

[9]     HRS § 604-7(4) (2016), states:

> **§ 604-7  Powers; venue**.  (a) The district courts may:
> . . . .
> (4)   Enforce judgments; and punish contempts according to law[.]

[10]    HRS § 706-605(7) (2014) states:

> **§ 706-605  Authorized disposition of convicted defendants**.
> . . . .
> (7)  The court shall order the defendant to make restitution for losses as provided in section 706-646.  In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.

compensation from the CICC.  And although a victim may bring civil action against the defendant, this process is costly and time consuming.

Therefore, your Committee on Conference believes that victims should have a "fast track" ability to be compensated for their losses by allowing them to enforce the criminal restitution order as a civil judgment, using all of the civil collection remedies.

Conf. Comm. Rep. No. 89, in 1998 House Journal, at 986, 1998 Senate Journal, at 780.  HRS § 706-644(4) (2014) provides for criminal court enforcement and modification of a restitution order until the restitution is paid.[11]  The supplemental

---

[11] HRS § 706-644(1) provides that a sentencing court may enforce the payment of restitution imposed "as a part of a judgment and sentence" under HRS § 706-605(7).  HRS § 706-644(1) permits the sentencing court to impose consequences for nonpayment of restitution "upon the motion of the prosecuting attorney or upon its own motion[.]"  The statute sets forth various consequences in the event of such default, depending on whether default was "contumacious" under subsection (1), or "not contumacious" under subsection (4).  Subsection (5) provides an additional avenue for summary collection, where a restitution order imposed "as a part of a judgment and sentence . . . may be collected in the same manner as a judgment in a civil action."

HRS § 706-644 states, in part:

**§ 706-644  Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection.**
(1)  When a defendant is sentenced pursuant to section 706-605, . . . and the defendant is ordered to pay a fee, fine, or restitution, whether as an independent order, as part of a judgment and sentence, or as a condition of probation or deferred plea, and the defendant defaults in the payment thereof or of any installment, the court, upon the motion of the prosecuting attorney or upon its own motion, may require the defendant to show cause why the defendant's default should not be treated as contumacious and may issue a summons or a warrant of arrest for the defendant's appearance.  Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant committed until the fee, fine, restitution, or a specified part thereof is paid.
. . . .
(4)  If it appears that the defendant's default in the payment of a fee, fine, or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment, reducing the amount of each installment, or revoking the fee, fine, or the unpaid

(continued...)

commentary to § 706-644 also explains that Act 269, Session Laws 1998, amended § 706-644 to "allow victims of a crime to enforce a criminal restitution order in the same manner as a civil judgment." HRS § 706-644 supp. cmt. (2014). The commentary to § 706-644 indicates that the intent of the 1998 amendment was to supplement the existing process of collecting restitution by allowing victims additional methods of enforcement. There is no language anywhere in the statutes or the commentary indicating that the Legislature intended to divest the district courts presiding over criminal cases from jurisdiction over enforcement of restitution orders. In fact, the legislative history quoted above clearly demonstrates the intent to offer *additional* ways for crime victims to be compensated for their losses. Therefore, we reject Fay's argument that the District Court lacked post-judgment jurisdiction to enforce its order that Fay pay restitution.

(2) Fay argues that the ordering of Compliance Hearings constitutes an abuse of discretion, citing State v. Gaylord, 78 Hawaiʻi 127, 890 P.2d 1167 (1995), and Bearden v. Georgia, 461 U.S. 660 (1983).

---

[11](...continued)
portion thereof in whole or in part, or converting the unpaid portion of the fee or fine to community service. A defendant shall not be discharged from an order to pay restitution until the full amount of the restitution has actually been collected or accounted for.

In <u>Gaylord</u>, the Hawaiʻi Supreme Court held that imposing consecutive terms of imprisonment, merely to ensure restitution payment, constituted an abuse of discretion. 78 Hawaiʻi at 154, 890 P.2d at 1194. Fay acknowledges that she "was neither sentenced to imprisonment nor probation on the OVUII, CPD4, and [NMVI] charges." Fay nevertheless asserts that were she to miss a Compliance Hearing, a bench warrant would be issued, therefore she could be imprisoned, and thus the principle in <u>Gaylord</u> is triggered. We decline to address such speculation, except to note that this hypothetical bench warrant would be issued because of failure to comply with a court-ordered appearance at a hearing, not because of a failure to pay restitution.

Fay's reliance on <u>Bearden</u> is equally misplaced. In <u>Bearden</u>, the defendant was placed on probation and ordered to pay a fine and restitution that totaled $750. 461 U.S. at 662. Soon after, defendant lost his job and notified the probation officer that his payment would be late. <u>Id.</u> at 662-63. The state then filed a motion to revoke probation and the trial court sentenced him to prison. <u>Id.</u> at 663. In reversing this sentence, the United States Supreme Court explained that if the state determines a fine or restitution is the appropriate and adequate penalty for the crime, it may not thereafter imprison the person solely because he lacked the resources to pay it. <u>Id.</u> at 667-69.

Here, the State has not sought to revoke probation, and Fay has not been sentenced to prison. <u>Bearden</u> does not apply.

Lastly, Fay argues that Compliance Hearings are a waste of judicial resources, criminalize individuals who lack the capacity to pay restitution, and needlessly duplicate the civil judgment mechanism. However, as discussed above, the District Court has statutory authority to enforce the Free Standing Order, and we cannot conclude that it is a waste of judicial resources or needlessly duplicative for the court to exercise its authority in this manner. Fay offers nothing in support of her contention that Compliance Hearings needlessly criminalize individuals who lack the capacity to pay restitution. We conclude that the District Court did not abuse its discretion in ordering Fay to appear at Compliance Hearings.[12]

For these reasons, the District Court's January 24, 2022 Amended Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, October 31, 2023.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard<br>Presiding Judge |
| Phyllis J. Hironaka,<br>Deputy Public Defender,<br>for Defendant-Appellant. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Renee Ishikawa Delizo,<br>Deputy Prosecuting Attorney,<br>County of Maui,<br>for Plaintiff-Appellee. | /s/ Karen T. Nakasone<br>Associate Judge |

---

[12] We note that in its Answering Brief, the State submits that the District Court's change-of-plea colloquy was deficient. However, as clearly stated in Fay's Reply Brief, Fay is not seeking relief from the Amended Judgment on this ground. Therefore, we decline to address it.